# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI
## NO. 2000-CA-01816-COA

**DAVID ORTMAN**                                                              **APPELLANT**

**v.**

**ELLEN CAIN, D.C.**                                                              **APPELLEE**

DATE OF TRIAL COURT JUDGMENT:  08/16/2000

TRIAL JUDGE:                   HON. KOSTA N. VLAHOS

COURT FROM WHICH APPEALED:     HARRISON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:        STEPHEN W. MULLINS

ATTORNEYS FOR APPELLEE:        STEPHEN WALKER BURROW

                               C. BRICE WIGGINS

NATURE OF THE CASE:            CIVIL - PERSONAL INJURY

TRIAL COURT DISPOSITION:       JURY VERDICT FOR DEFENDANT

DISPOSITION:                   AFFIRMED - 1/8/02

MOTION FOR REHEARING FILED:    1/22/2002; denied 3/19/2002

CERTIORARI FILED:

MANDATE ISSUED:                4/9/2002

BEFORE BRIDGES, P.J., LEE, AND CHANDLER, JJ.

BRIDGES, P.J., FOR THE COURT:

¶1. David Ortman filed suit on December 29, 1997, in the Harrison County Circuit Court against Ellen Cain, D.C., for medical malpractice with the Honorable Kosta Vlahos presiding. The jury returned a verdict in favor of the defendant on October 19, 2000. Ortman has appealed and comes now to this Court with five issues which we quote:

> **1. WHETHER THE TRIAL COURT ERRED IN FAILING TO STRIKE JUROR SARGEN MELLEN BASED ON HIS FAMILIARITY WITH THE DEFENSE EXPERT WITNESS;**
>
> **2. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT THE SWORN STATEMENT OF JOHNNY HULON INTO EVIDENCE.**
>
> **A. WHETHER THE TRIAL COURT ERRED IN EXCLUDING PORTIONS OF DR. DANIELSON'S DEPOSITION AND DR. BRAGMAN'S TESTIMONY;**
>
> **3. WHETHER THE TRIAL COURT ERRED IN FAILING TO ALLOW FOR OPENING STATEMENTS;**

**4. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS SUDDEN EMERGENCY DEFENSE IN CONTRAVENTION OF MISSISSIPPI CASE LAW.**

**A. WHETHER THE TRIAL COURT ERRED IN STRIKING AN AGREED JURY INSTRUCTION ON PREEXISTING CONDITIONS; AND**

**5. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

Finding no error, we affirm.

## FACTS

¶2. David Ortman was working for Conn Construction in Gulfport when he felt a twinge in his back. On August 15, 1996, Ortman awoke to a great deal of pain in his back. Ortman called Conn Construction, and a co-worker was sent to take him to the doctor. Johnny Hulon picked Ortman up and took him to see Dr. Cain. Hulon helped Ortman into the doctor's office because he was in a great deal of pain and was having trouble walking by himself.

¶3. Dr. Cain brought Ortman into her examination room and placed him on an examination table. Dr. Cain obtained a brief history from Ortman, and proceeded to ask him some questions (i.e. was his body numb, etc.). Dr. Cain did not order an X-ray of his back. Dr. Cain tried to alleviate some of the pain Ortman was experiencing by applying pressure to the sacroiliac joint. This caused the examination table to drop, and Ortman began to experience even more pain than he had before the pressure. Ortman was unable to stand at all. An ambulance was called, and it transported him to Memorial Hospital in Gulfport. Ortman was diagnosed with a herniated disk and underwent surgery to repair his disk. After approximately ten days, Ortman returned to work.

## STANDARD OF REVIEW

¶4. "Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion." *Dobbs v. State*, 726 So. 2d 1267, 1274 (¶25) (Miss. Ct. App. 1998).

¶5. The standard of review when dealing with jury instructions has been stated as "[r]ather, our job, as an appellate court, is to review the jury instructions as a whole to determine whether 'the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law.'" *O'Flynn v. Owens-Corning Fiberglas*, 759 So. 2d 526 (¶31) (Miss. Ct. App. 2000).

¶6. A motion for a new trial is left to the circuit court's discretion and raises issues regarding the weight of the evidence. *Jackson v. State*, 551 So. 2d 132, 148 (Miss. 1989). The standard of review for a challenge to the weight of the evidence is found in *Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989):

> In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.

*See also Isaac v. State*, 645 So. 2d 903, 907 (Miss. 1994); *Newsom v. State*, 629 So. 2d 611, 615 (Miss. 1993); *Burrell v. State*, 613 So. 2d 1186, 1190-91 (Miss. 1993); *Nicolaou v. State*, 612 So. 2d

1080, 1083 (Miss. 1992); *Parker v. State,* 606 So. 2d 1132, 1139-40 (Miss. 1992).

## ANALYSIS

### 1. WHETHER THE TRIAL COURT ERRED IN FAILING TO STRIKE JUROR SARGEN MELLEN BASED ON HIS FAMILIARITY WITH THE DEFENSE EXPERT WITNESS.

¶7. Ortman raises this issue because the trial court did not allow him to use a "for cause" challenge to juror Sargen Mellen. Ortman then points out that a nurse, juror Bolden, was placed on the jury because Ortman had to use one of his peremptory instructions to exclude Mellen from the jury. Ortman argues the jurors were likely to put an inordinate amount of weight on the opinions Bolden had because of her health care background. Dr. Cain counters by stating that Ortman mis-applies the law in his arguments, and by pointing out Ortman failed to object to Bolden being placed on the jury.

¶8. Ortman believes there are several statements which should have caused the trial court to grant Ortman's "for cause" challenge to Mellen. The trial court asked Mellen if he had a positive opinion about chiropractors, and he stated he did but that it would not effect his verdict. Mellen was asked by counsel for Ortman if he had ever gone to a chiropractor and Mellen stated he had. Mellen also stated his father had been treated by Dr. Smith, who was one of the doctors testifying for the defense, and it was possible Mellen might give Smith's statements more credence because of the treatment.

¶9. In support of his contention that the trial court should have allowed him to use a "for cause" challenge to excuse Mellen, Ortman relies on the cases of *Scott v. Ball*, 595 So. 2d 848 (Miss. 1992) and *Davis v. Powell*, 781 So. 2d 912 (Miss. Ct. App. 2001). These two cases stand for the position that if a juror knows or is somehow connected to one of the parties, such that the connection would influence the way the juror decided the case, then the trial court should allow a "for cause" challenge in order to prevent a biased jury. *Scott*, 595 So. 2d at 850, *Davis*, 781 So. 2d at (¶21). These cases are distinguishable from this case, because they dealt with situations where the jurors knew one of the parties involved in the lawsuit. Here, Mellen did not know the parties involved in the case; Mellen only knew one of the witnesses who was testifying for Dr. Cain. The person with whom the juror is familiar makes a large difference in deciding whether the juror will be biased. If the juror is familiar with the party then there is a greater chance of prejudice than there is if the juror is only familiar with a witness.

¶10. Mellen stated his personal opinion concerning the testifying expert would not affect his decision on the verdict. The Mississippi Supreme Court has dealt with instances in which jurors have given assurances that they could be impartial. One such case is *Scott v. Ball*, 595 So. 2d 848 (Miss. 1992), one of the authorities Ortman bases his argument on, in which the court stated: It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference. *Id.* at 850. With this in mind, it cannot be said that the trial court was in error for denying Ortman's "for cause" challenge. The questions raised about Mellen serving as a juror were based on his relationship with a witness; however, Mellen stated he would not let his personal opinions alter his verdict. Because of this, the law requires we grant Mellen's statement deference. The trial court did not abuse its discretion in denying the "for cause" challenge, and for this reason we affirm.

¶11. Also, the notion that juror Bolden somehow tainted the jury because of her profession is without merit.

First of all, such an argument engages in speculation. Secondly, Ortman failed to object to Bolden being placed on the jury, and his failure to preserve for appeal acts as a waiver. *Sanders v. State*, 786 So. 2d 1078 (¶10) (Miss. Ct. App. 2001).

## 2. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT THE SWORN STATEMENT OF JOHNNY HULON INTO EVIDENCE.

¶12. This issue deals with the admissibility of a statement taken from Johnny Hulon prior to the filing of this lawsuit. Johnny Hulon was the co-worker who took Ortman to see Dr. Cain, and he was the only non-party witness to what happened at Dr. Cain's office. Hulon's statement was taken prior to the filing of this lawsuit by Ortman's attorney. During pretrial preparation, Hulon passed away, and Dr. Cain's attorneys were never able to develop any testimony from Hulon. When Ortman tried to introduce the statement, Dr. Cain objected, and the statement was prohibited from being entered into evidence as it was hearsay.

¶13. Ortman argues this statement fits into the catch all category of Mississippi Rules of Evidence 804 (b) (5). "The five (5) requirements for admissibility under the residual or "catch-all" exception found in [Rule 804 (b) (5)] are: (1) trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice, and (5) notice." *Quimby v. State*, 604, So. 2d 744, 747 (Miss. 1992).

¶14. With these requirements in mind, it is clear that the Hulon statement is inadmissable hearsay. Regarding the notice requirement, counsel for Ortman told Dr. Cain he would give an address and phone number for Hulon, but never did. Also, there were no real guarantees of trustworthiness. Hulon was a disinterested party; however, lack of interest does not in itself offer sufficient guarantees of trustworthiness. Opposing counsel was not present during the making of this statement, and thus they were prevented from developing testimony from Hulon.

¶15. In addition, both Dr. Cain and Ortman testified to what happened on the day in question. Since they were also there, their testimony is just as probative on what happened in Dr. Cain's office on the day in question as testimony offered by anyone else. Thus, the Hulon statement is not more probative than any other of the evidence, and does not meet the requirements set out in *Quimby*. *Quimby*, 604 So. 2d at 747. As stated earlier, a trial court has a great deal of discretion in deciding what things are allowed into evidence and what things are kept out. *Dobbs*, 726 So. 2d at 1274 (¶25). Because Hulon's statement fails to meet the requirements set out in *Quimby*, the trial court did not abuse its discretion in preventing the statement from getting into evidence. For this reason, we affirm.

## A. WHETHER THE TRIAL COURT ERRED IN EXCLUDING PORTIONS OF DR. DANIELSON'S DEPOSITION AND DR. BRAGMAN'S TESTIMONY.

¶16. In raising this sub-issue, Ortman argues the trial court erred in striking the portions of Dr. Danielson's and Dr. Bragman's testimony which dealt with the facts they learned by reading Johnny Hulon's statement. As stated earlier, Hulon's statement is inadmissible hearsay, but Ortman argues here that these portions of Hulon's statements fit into the hearsay exception for things which it is permissible for doctors to base their opinions on. However, Ortman fails to cite any case law in support of his argument. It is well known that a failure to cite case law in support of one's contentions acts as a procedural bar, preventing this Court from considering it. *Ratcliff v. State*, 752 So. 2d 435 (¶7) (Miss. Ct. App. 1999) (citing *Hewlett v. State*, 607 So. 2d 1097, 1107 (Miss. 1992)). Therefore, we are barred from considering this sub-issue.

### 3. WHETHER THE TRIAL COURT ERRED IN FAILING TO ALLOW FOR OPENING STATEMENTS.

¶17. The trial court in this matter required that the parties give their opening statements to the entire jury pool prior to jury selection. Ortman claims this was error, because Rule 10.03 of the Uniform Circuit and County Court Rules allows for an opening statement to be made to the jury.

¶18. Rule 6.01 of the Uniform Circuit and County Court Rules states that rules 6 through 12 only apply to criminal cases, so Ortman's argument that the trial court violated Rule 10.03 is incorrect. More importantly, however, is the fact Ortman failed to object to this matter during the trial. In order to preserve this matter on appeal, a contemporaneous objection must be made at the time that the trial court is denying any further opening statement. *Sanders*, 786 So. 2d at 1078 (¶10). No such objection was made in this case. Therefore, this matter is not properly before this Court, and it should be dismissed.

¶19. It should be noted that the trial court allowed both sides in this case to make an opening statement. The only difference between this case and most other trials is that the trial court made the attorneys give their opening statement before jury selection. This does not strike the Court as an abuse of discretion.

### 4. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS SUDDEN EMERGENCY DEFENSE IN CONTRAVENTION OF MISSISSIPPI CASE LAW.

¶20. In this issue, Ortman states the trial court erred by letting the medical witnesses for Dr. Cain testify to an incorrect standard of care. Ortman claims the trial court allowed Dr. Cain's witnesses to raise the "sudden emergency" defense, which allows the standard of care to be lessened because of an emergency. The "sudden emergency" defense was abolished in Mississippi by the case *Knapp v. Stanford*, 392 So. 2d 196, 198 (Miss. 1981), and Ortman claims it was therefore error to allow it to be used. Dr. Cain denies this defense was used, and points out the witnesses she put on testified to the correct standard of care.

¶21. The standard of care which this Court follows in cases of medical malpractice was set out in the case of *Hall v. Hilbun*, 466 So. 2d 856 (Miss. 1986) (superseded by statute for other reasons). It states:

> given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment and options.

*Id.* at 873. This standard of care was upheld recently in the case of *McCaffrey v. Puckett*, 784 So. 2d 197 (¶20) (Miss. 2001). The jury in the case at bar was given instructions in accord with this standard of care, and therefore was properly instructed.

¶22. Ortman claims Dr. Cain was trying to get the "emergency defense" into this case by having his expert witness testify that the emergency-like circumstances, which existed when Ortman was brought into Dr. Cain's office, somehow lessened the standard of care. This is not true. Dr. Cain's expert witness testified in accordance with the proper standard of care from *Hall v. Hilbun*. *Hall*, 466 So.2d at 873. Dr. Cain acted in conformity with the proper standard of care for a patient in the circumstances Ortman was in. The standard of care was not lessened because of an emergency. The standard of care for a patient under Ortman's circumstances was followed. Because of this, the idea that Dr. Cain somehow used the "sudden

emergency" defense carries no weight.

¶23. Ortman's real problem seems to be with the opinions Dr. Cain's expert had. It is the jury's job to weigh the credibility of the evidence before it, and to decide which parts of conflicting testimony it will believe. *Brown v. State*, 763 So. 2d 207 (¶4) (Miss. Ct. App. 2000). That is what the jury did in this case, and we see no reason to interfere with its decision. Since the decision to let this witness testify was an evidentiary ruling, there must be an abuse of discretion by the trial court in order to warrant a reversal. *Dobbs*, 726 So. 2d at (¶25). There was no such abuse of discretion here, and for this reason, we affirm.

### A. WHETHER THE TRIAL COURT ERRED IN STRIKING AN AGREED JURY INSTRUCTION ON PREEXISTING CONDITIONS.

¶24. This sub-issue deals with an agreed upon jury instruction which was offered by Ortman which Ortman claims the court refused to give to the jury. The record states that jury instruction P-9, the instruction in question, was given to the jury prior to their deliberations. However, after examining the jury instructions that were given to the jury, it appears P-9 was given with some of it marked out. Therefore, this issues does not deal with why the entire instruction was stricken. This issue really deals with why part of P-9 was stricken. While this may be so, the record offers no indication Ortman objected to the giving of the modified instruction. Since this modification of the instruction was not objected to, then the issue was not properly preserved for appeal. *Sanders*, 786 So. 2d at (¶10). Thus, we hereby affirm.

### 5. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶25. Ortman argues the jury verdict was against the overwhelming weight of the evidence for the simple fact that Ortman entered Dr. Cain's office on foot, and left in an ambulance. Ortman points out Dr. Cain did not take a complete history of Ortman's problems, and tries to tie it all into a *res ipsa loquitor* type argument. This issue does not deserve consideration for several reasons. First, Ortman makes his arguments without the support of case law. While he does cite to an AmJur article, our case law prevents the consideration of an issue if it is not supported by case law. *Ratcliff*, 752 So. 2d at (¶7). It should also be noted Ortman did not file a motion for a new trial in the lower court. To challenge the holding of a jury verdict on the basis that the verdict is against the overwhelming weight of the evidence, a party must first file a motion for a new trial. *Hughey v. State*, 729 So. 2d 828 (¶6) (Miss. Ct. App. 1998). Ortman failed to make such a motion, and even cites to the incorrect standard of review for such an issue. Therefore, because Ortman is procedurally barred by the previous two reasons, this issue cannot be heard on this appeal.

### CONCLUSION

¶26. The trial court in this case was not in error for denying Ortman the use of a "for cause" challenge to Juror Mellen. The trial court was also not in error for refusing to admit the hearsay statements of Johnny Hulon, nor was it in error in instructing the jury as to the proper standard of care. For these reasons, we affirm the holding of the trial court.

¶27. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.**