816 So.2d 436 (2002)
Jessie Dewayne JOHNSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01954-COA.
Court of Appeals of Mississippi.
April 30, 2002.
*437 William Wayne Housley, Jr., Tupelo, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Jessie Johnson was indicted on charges of capital murder in Lee County Mississippi. Trial was held in Tishomingo County after Johnson's motion for change of venue was granted. The trial was conducted in the presence of a sequestered jury and resulted in a guilty verdict. The case was returned to Lee County for sentencing. Johnson was sentenced to a term of life imprisonment without hope of parole or probation. He filed a motion for judgment notwithstanding the verdict or in the alternative for new trial which was denied by the circuit court.
¶ 2. Feeling aggrieved, Johnson appeals his conviction and alleges seven assignments of error. First, he argues that the trial court did not present sufficient evidence to support the underlying kidnaping charge. Next, he argues that he was deprived of his right to effective assistance of counsel, due process, and a fair trial because the State disclosed allegedly exculpatory *438 evidence on the day of trial. Johnson also argues that the trial court erred in failing to quash the indictment. He further argues that the trial court erred in allowing the State to introduce items of physical evidence for which the State did not satisfy the chain of custody of said evidence. Next, Johnson asserts that the trial court erred in failing to grant his motion for a directed verdict and in the alternative for a new trial. He also argues that the trial court erred in admitting certain photographs of the victim into evidence. Lastly, he makes a general statement that the cumulative effect of the above errors resulted in great prejudice and denied him a fair trial.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. On or about December 10, 1998, at approximately 10:00 p.m., Johnson, Dale Bishop, Marcus Gentry, Corey Johnson, and Charles Rakestraw came to the apartment of Ricky Myhand in the town of Saltillo, Lee County, Mississippi. The men were invited into the apartment where they drank beer and visited for a time.
¶ 5. A short time later Johnson, Myhand, Bishop, and Gentry left the apartment to purchase more beer. Gentry drove and they rode in his vehicle. While on the return trip to Myhand's apartment, Johnson confronted Gentry about identifying Johnson's younger brother as a participant in criminal activities. Johnson hit Gentry in the head with a hammer located on the passenger side floor board of the car. Bishop grabbed Gentry and hit him twice in the face. Johnson then got out of the car and walked around to the driver's side. He got back in the car and pushed Gentry over to the passenger side. Johnson drove the car along the country road while hitting Gentry twice more with the hammer.
¶ 6. Johnson stopped the car after a short distance and Gentry was able to escape from the car and run into the woods. Johnson told Bishop to catch Gentry and bring him back to the car. Johnson and Myhand remained with the car while Bishop went after Gentry. A short time later, Bishop returned pulling Gentry along with him. Johnson told Gentry to kneel down in front of the car. He ordered Myhand to hold Gentry upright while he and Bishop hit and kicked Gentry. Johnson then hit Gentry about the head and throat multiple times with the blunt end and claw end of the hammer.
¶ 7. Johnson and Bishop carried Gentry's body into the bushes alongside the road. Gentry was still alive at this time. Testimony reflected that he died by suffocation caused by blood blocking his airway.
¶ 8. Johnson and the others returned in Gentry's car to Myhand's apartment. Because they were both covered in blood, Johnson and Bishop took showers and obtained clean clothes from Myhand. Johnson, Bishop, Corey Johnson, and Charles Rakestraw then left Myhand's apartment with a shovel they had taken from Myhand's apartment.
¶ 9. Myhand and his girlfriend left the apartment and went to the Saltillo Police Department. Finding no one there, they returned to Myhand's apartment and contacted 911 emergency services to report the murder. Police responded and Myhand led local law enforcement officials to where Gentry's body was located. After approximately three days on the run, Johnson was located and gave a statement to the police in which he admitted that he was angry with Gentry and hit him in the head with a hammer at least sixteen times.

LAW AND ANALYSIS

I. WAS THE EVIDENCE PRESENTED AT TRIAL LEGALLY *439 SUFFICIENT TO SUSTAIN THE VERDICT?
¶ 10. Johnson filed two allegations of error challenging the weight and sufficiency of the evidence presented at trial. To avoid a duplicative review of these issues, they will both be discussed at this time.
¶ 11. Whether the evidence is legally sufficient is an argument that is raised by a motion for a directed verdict or a JNOV. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the Court should accept as true all credible evidence consistent with the defendant's guilt and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 12. Johnson first argues that the State failed to present sufficient evidence to support the underlying felony of kidnaping. Mississippi Code Annotated Section 97-3-53 (Rev.2000) sets forth the requirements for a finding of kidnaping as, "[a]ny person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will."
¶ 13. Applying the above principles to the case at bar, there was testimony that Johnson hit Gentry in the head and took control of Gentry's vehicle. He then drove the vehicle a short distance and stopped on a country road. At that time Gentry escaped and Johnson instructed Bishop to catch Gentry and bring him back to the car. When Bishop returned to the car with Gentry, Gentry begged Johnson to let him go and not to hit him again. Johnson responded by continuing to beat Gentry with his fists and the hammer and then drug Gentry's body into the woods and left him for dead. Admitted into evidence was Johnson's statement in which he admitted to these acts and the eyewitness testimony of Myhand. The above facts are legally sufficient to support the underlying felony of kidnaping.
¶ 14. Johnson also argues that the trial court erred by not granting his motion for judgment notwithstanding the verdict or in the alternative for a new trial. A motion for a new trial is used to challenge the weight of the evidence. McClain, 625 So.2d at 781. The decision to grant a new trial rests in the sole discretion of the trial court. Id. Such a motion should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812. This Court, on appeal, will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable to the State. McClain, 625 So.2d at 781.
¶ 15. Johnson's only assertion in support of this argument is that the State failed to present prima facie evidence to support the indictment. This statement is grossly insufficient to support a finding that the State failed to present evidence legally sufficient to sustain the verdict. McClain, 625 So.2d at 781. Such an argument also fails to persuade this Court that the verdict was clearly against the overwhelming weight of the evidence. Wetz, 503 So.2d at 812.
¶ 16. Again applying the case law listed above, it is clear that the trial *440 court did not err in denying Johnson's motion. Johnson's statement admitting to the acts was accepted into evidence. There was also the eyewitness testimony of Myhand. Whether or not Myhand's testimony was credible is not for this Court to determine. A reviewing court need not concern itself with issues of credibility. It is for the jurors to resolve conflicts in testimony. Jackson v. State, 614 So.2d 965, 972 (Miss.1993). They may accept or reject any utterances they hear based upon hearing and observing the witnesses as they testify. Id. "The jury is the sole judge of credibility of witnesses and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss.1984).

II. DID THE TRIAL COURT DEPRIVE JOHNSON OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF LAW, AND FAIR TRIAL BY ALLOWING THE STATE TO DISCLOSE AT TRIAL ALLEGEDLY EXCULPATORY EVIDENCE?
¶ 17. Johnson argues that he was severely prejudiced at trial because the trial court allowed the State to disclose allegedly exculpatory evidence on the day of trial. These arguments are without foundation or merit.
¶ 18. Johnson does not inform this Court of the exact items that he claims were not disclosed until the day of trial. He asserts that the State concealed "an entire box full of items" until the day of trial. The only items he refers to specifically are the clothes worn by Myhand the night of the murder. Myhand turned his clothing over to the police after alerting them to the murder. Johnson argues that if he had had access to this clothing, he could have used it to impeach Myhand's testimony at trial.
¶ 19. It is unclear how this clothing would have been used to impeach. The blood on the clothing was Gentry's. Myhand told the officers he gave the clothes to that the blood on the clothes was Gentry's. At trial, Myhand testified that Johnson had ordered him to hold Gentry upright while Johnson and Bishop hit him with the hammer. Myhand testified that "he was scared to death" and complied because he was sure Johnson and Bishop would kill him as well if he did not obey them.
¶ 20. Also, although Johnson claims that the evidence was not disclosed until the day of trial, the State's discovery response clearly discloses the fact that Myhand's clothing was in its possession and the location of the clothing. Johnson could have obtained access to these items of clothing before trial if he had thought it necessary. The record does not support his contention that this evidence was concealed from him.
¶ 21. As to any other evidence that might be contained in the "box full of items," Johnson's failure to specifically indicate which items of evidence were concealed from him prevents this Court from further discussing this assignment of error.

III. DID THE TRIAL COURT ERR IN FAILING TO QUASH THE INDICTMENT?
¶ 22. Johnson argues that the trial court erred in failing to quash the indictment because it failed to set forth the essential elements of capital murder, specifically, it does not include the language, "without authority of law." The indictment charged in part, "That JESSIE DEWAYNE JOHNSON AND DALE LEO BISHOP did wilfully, unlawfully and feloniously, *441 with or without any deliberate design to effect death, kill and murder Marcus James Gentry...."
¶ 23. This assignment of error is without merit. In Turner v. State, 796 So.2d 998(¶ 20) (Miss.2001), the court said:
[A] common sense analysis of the definition of "unlawfully," similar to the analysis of "`[w]ilfully or willfully' and `intentionally'" found in Lester v. State, 692 So.2d 755, 789 (Miss.1997), overruled on other grounds, Weatherspoon v. State, 732 So.2d 158, 162 (Miss.1999), shows that "without the authority of law" is synonymous with "unlawfully" and that they are "interchangeable." Black's Law Dictionary defines unlawful as "not authorized by law; illegal." Black's Law Dictionary 1536 (7th ed.1999). Webster's defines unlawful as "not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by law." Webster's Third New International Dictionary 2502 (1986). The word "unlawfully" and the phrase "without the authority of law" are interchangeable.
Turner, 796 So.2d at (¶ 20).

IV. DID THE TRIAL COURT ERR IN ADMITTING CERTAIN ITEMS OF PHYSICAL EVIDENCE FOR WHICH THE STATE FAILED TO ESTABLISH THE PROPER CHAIN OF CUSTODY?
¶ 24. Johnson argues that the trial court should not have admitted certain items of physical evidence because the State failed to establish the proper chain of custody. Exactly what items Johnson is referring to is unclear; however, he does specifically object to admission of the hammer, pictures of the victim and a letter written by Johnson.
¶ 25. The standard of review of a trial court's admission of evidence is the abuse of discretion standard. Robinson v. State, 758 So.2d 480, 488(¶ 31) (Miss.Ct. App.2000) (citing Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997)). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and `unless this judicial discretion is so abused as to be prejudicial to the accused,' then the ruling of the lower court must be affirmed." Francis v. State, 791 So.2d 904, 907(¶ 7) (Miss.Ct.App.2001) (quoting Graves v. State, 492 So.2d 562, 565 (Miss. 1986)).
¶ 26. Mississippi Rule of Evidence 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." M.R.E. 901(a). The Mississippi Supreme Court has held that the test for chain of custody is "whether there is any indication of tampering or substitution of evidence." Wells v. State, 604 So.2d 271, 277 (Miss.1992). Furthermore, the State does not have to produce every person who handled the evidence, nor does the State have to account for every minute of every day. Butler v. State, 592 So.2d 983, 985 (Miss.1991).
¶ 27. The photographs and hammer objected to by Johnson were properly admitted. Johnson's objections to the evidence consisted of questioning the full chain of custody. As stated above, the State does not have to produce every person who handled the evidence. Butler, 592 So.2d at 985. Also, such an objection must indicate that the evidence has been tampered with or improperly substituted. Wells, 604 So.2d at 277. Johnson made no such claims.
*442 ¶ 28. The police investigator who took the photographs testified that the pictures admitted reflected the scene he photographed the night of the murder. The same officer testified that the hammer admitted into evidence was the same hammer that he collected from Gentry's vehicle. The decision of whether the State has properly shown the chain of custody of evidence is left to the discretion of the trial court, Wells, 604 So.2d at 277, and this Court will not reverse the trial court's ruling absent abuse resulting in prejudice to the defendant. Gibson v. State, 503 So.2d 230, 234 (Miss.1987). Johnson has failed to provide this Court with any indication that the trial court abused its discretion in admitting the items, as such, this assignment of error is without merit.
¶ 29. Johnson also objects to the admission of a threatening letter written by him to a guard at the prison where he was incarcerated pending trial. This letter was admitted during the sentencing phase of the trial only. Johnson's claims that the letter was not properly authenticated must fail because he admitted to writing the letter. The judge did not abuse his discretion in allowing the letter to be admitted as an aggravating circumstance during the sentencing phase of the trial.

V. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN PHOTOGRAPHS TO BE ADMITTED INTO EVIDENCE?
¶ 30. Johnson argues that photographs of the victim and the surrounding area where the body was found should not have been admitted into evidence. He maintains that the pictures only served to inflame the jury and prejudice him.
¶ 31. The Mississippi Supreme Court considered this issue in Simmons v. State, 805 So.2d 452(¶ 80) (Miss. 2001). Photographs of the victim have evidentiary value when they aid in describing the circumstances of the killing, the location of the body, the cause of death, or clarify or supplement a witness's testimony. Gray v. State, 728 So.2d 36(¶ 92) (Miss.1998). Their admissibility rests within the sound discretion of the trial court and will not be overruled unless there was an abuse of discretion. Gray, 728 So.2d at 57. The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value. Woodward v. State, 726 So.2d 524, 535 (Miss.1997).
¶ 32. Reference to the above case law clearly indicates that admission of the photographs of the victim, regardless of their gruesome nature, was proper. The trial judge did not abuse his discretion and this assignment of error is without merit.

VI. DID THE TRIAL COURT DENY JOHNSON AN UNFAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS ASSERTED ON APPEAL?
¶ 33. Johnson makes a general statement that the cumulative effect of the errors raised on appeal served to deny him a fair trial as guaranteed by law. Because all of Johnson's assignments of error have been found to be without merit, this assertion must also fail.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY ON CHANGE OF VENUE TO TISHOMINGO COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO LEE COUNTY.
*443 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.