935 So.2d 1108 (2006)
Kado James JACKSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00784-COA.
Court of Appeals of Mississippi.
May 9, 2006.
*1111 Herbert H. Klein, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
GRIFFIS, J., for the Court.
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn and this opinion substituted in its place.
¶ 2. A series of thefts, reported by Artis Shows, from construction sites in Hattiesburg, Mississippi, eventually led Officer David Jerrell, an investigator with the Forrest County Sheriff's Department, to the residence of Kado James Jackson on September 2, 2003. Officer Jerrell was joined by Officer Glenn Moore, also with the Forrest County Sheriff's Department, and Officer Michael Palmer, from the Petal Police Department, both of whom were assigned to the Metro Narcotics Task Force for Forrest and Perry Counties. No one answered the door at Jackson's house, so Officer Jerrell contacted Jackson by phone and requested that he come there. Jackson agreed, and the officers waited, remaining outside at all times. While waiting, though, they were joined by Officers Robert McGinty and Mark Denny, both of whom were assigned to the Metro Narcotics Task Force for Forrest and Perry Counties through their employment with the Hattiesburg Police Department. Jackson arrived shortly thereafter, at which time Officer Jerrell explained to him why he and the other officers were there. Officer Jerrell then advised Jackson of his Miranda rights, after which Jackson executed a written consent to search form. The ensuing search of the house yielded, inter alia, a large quantity of cocaine along with three individuals, namely, Carl Willis, Roderick Wilborn, and a minor child.
¶ 3. All evidence seized in said search was then presented to a grand jury in the Circuit Court of Forrest County. The grand jury heard, in pertinent part, Officer *1112 Jerrell testify to the fact that Jackson admitted during said search that all of the cocaine found was his and his alone. The State also called Benny Sellers to the stand, who testified, in his capacity as the city engineer as well as the director of public services for the City of Hattiesburg, that Jackson's house was approximately 285 feet from Beacon Baptist Church. The grand jury returned an indictment at the conclusion of said hearing, and on December 16, 2003, Jackson was found guilty of possession of more than thirty grams of cocaine with the intent to transfer or distribute, with said act having been committed within 1,500 feet of a church. The court then sentenced Jackson to a term of sixty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended on post-release supervision, and ordered Jackson to pay $25,000 in fines plus all costs of court.
¶ 4. On December 22, 2003, Jackson filed what he termed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict; however, the motion was denied. Aggrieved by the denial, Jackson has effectuated this appeal and presents fifteen assignments of error, which have been combined into the following fourteen assignments of error for our review:
I. DID THE TRIAL COURT ERR IN DENYING JACKSON'S VARIOUS MOTIONS TO SUPPRESS EVIDENCE ALLEGEDLY SEIZED WITHOUT A WARRANT
II. DID THE TRIAL COURT ERR BY ALLOWING TESTIMONY THAT WAS INADMISSABLE AS HEARSAY, THUS IN VIOLATION OF THE CONFRONTATION CLAUSE
III. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE EXHIBIT S-7 BASED ON THE STATE'S FAILURE TO ESTABLISH A PROPER CHAIN OF CUSTODY
IV. DID THE TRIAL COURT ERR IN ALLOWING OFFICER MOORE TO TESTIFY AS AN EXPERT IN THE FIELD OF FINGERPRINTING
V. DID THE TRIAL COURT ERR IN GIVING JURY INSTRUCTION S-6
VI. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE EXHIBIT S-8
VII. DID THE TRIAL COURT ERR IN DENYING JACKSON'S MOTION FOR A DIRECTED VERDICT BASED ON THE STATE'S FAILURE TO PROVE THE DISTANCE SPECIFIED IN THE INDICTMENT
VIII. DID THE TRIAL COURT ERR IN GIVING JURY INSTRUCTIONS S-1A AND S-3A
IX. DID THE TRIAL COURT ERR IN DENYING JURY INSTRUCTION D-17
X. DID THE TRIAL COURT ERR IN PROHIBITING JACKSON'S ATTORNEY FROM DISCUSSING HIS THEORY OF DEFENSE DURING CLOSING ARGUMENTS
XI. DID THE TRIAL COURT ERRONEOUSLY SENTENCE JACKSON TO A TERM WHICH EXCEEDED THAT OUTLINED IN THE PLEA BARGAIN
XII. DID THE TRIAL COURT ERRONEOUSLY CONSIDERING FACTS NOT IN EVIDENCE WHEN SENTENCING JACKSON
XIII. DID THE TRIAL COURT ERRONEOUSLY SENTENCE JACKSON IN VIOLATION OF THE EIGHTH AMENDMENT
XIV. DID THE CUMULATIVE EFFECT OF THE INDIVIDUAL ERRORS COMMITTED BY THE TRIAL COURT PREJUDICE JACKSON, *1113 THUS ENTITLING HIM TO A NEW TRIAL
Finding Jackson's argument to be without merit, we affirm.

LAW AND ANALYSIS
¶ 5. We preface our discussion in this matter noting that Jackson, in raising fifteen assignments of error, premises the arguments he advances as to some on conclusions he reaches on others. Therefore, in striving for clarity and brevity, we will combine such issues in our discussion when appropriate.

I. UNCONSTITUTIONAL SEARCH AND SEIZURE
¶ 6. Jackson maintains that the trial court erroneously denied his motion to suppress all evidence seized in the search of his house based on his contention that said search was conducted without a warrant. More specifically, Jackson claims that the officers who conducted the search of his property (a) trespassed via the rear driveway, entered the house without either probable cause or a valid search warrant, (b) began searching his property prior to obtaining his consent to search, (c) failed to restrict said search based on his "limited" consent to search and continued the search over his objection, which he believes he effectively revoked, what he terms, his "limited" written consent to search, and (d) the State failed to prove consent to search was voluntary pursuant to Agee v. State, 185 So.2d 671 (Miss.1966). Jackson additionally claims that the trial court erred in refusing to suppress statements made by him during the search because they are tainted as "fruit of the poisonous tree."
¶ 7. First, we note that a claim of police trespass cannot occur on areas normally used by visitors. Mitchell v. State, 792 So.2d 192, 206(¶ 56) (Miss.2001). Just as the officers entered Jackson's property in the case at bar, the court in Mitchell found that the area the police occupied "was an area of common use, near the driveway and the back door." Id. Secondly, the search did not begin until Jackson's consent was obtained; therefore, the Fourth Amendment was not violated. The officers proceeded to search Jackson's property only after being authorized to do so, pursuant to the consent to search form executed by Jackson in writing. Searches may compromise an individual's interest in privacy; however, if an article is in plain view, neither its observation nor seizure would involve an invasion of privacy for Fourth Amendment purposes. Horton v. California, 496 U.S. 128, 133-35, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The fact that Jerrell saw the alleged stolen property in the backyard prior to calling Jackson does not mean that the search had begun because the property was in plain view from the back of the residence. Third, Jackson cites no authority for a warrantless search being subject to restrictions, thus we find no merit in his argument that his consent was limited, and he revoked his consent after the search had already commenced. Fourth, Jackson misapplies the rule of law in Agee when he claims the State failed to prove the consent to search was voluntary pursuant to the Agee rule because the issue addressed is the State's burden of proving that a confession was voluntarily made without any threats, coercion, or offer of reward. Agee, 185 So.2d at 673. Finally, Jackson's reliance on the fruit of the poisonous tree doctrine, as expressed in Conerly v. State, 760 So.2d 737, 741 (¶¶ 10-11) (Miss.2000), is misguided because the issue addressed by the court therein concerns whether a confession obtained after an illegal arrest is admissible. Finding that neither the search of Jackson's property nor Jackson's arrest was unlawful, we find that no evidence in *1114 issue can be considered fruit of the poisonous tree, thus, inadmissible.

II. HEARSAY
¶ 8. During the pretrial motion hearings, the court allowed Officer Jerrell to explain, over Jackson's objection, as to how he came to enter the residence. The testimony included hearsay information obtained by Greg Shows, who is the son of Artis Shows, and his girlfriend, Tracy Ezell, regarding the alleged stolen property at Jackson's residence. Jackson asserts the admission of Shows and Ezell's statements by way of Jerrell violates his constitutional right to confront the witness, guaranteed to him by the confrontation clauses of the United States Constitution and the Constitution of the State of Mississippi.
¶ 9. Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c); Clemons v. State, 732 So.2d 883, 888(¶ 19) (Miss.1999). None of the statements that Jackson objected to were offered to prove the truth of the matter asserted, which was whether the stolen items were in Jackson's possession. Furthermore, hearsay is admissible to the extent required to show why an officer acted as he did and where he was at a particular place at a particular time. Tate v. State, 819 So.2d 555, 558(¶ 14) (Miss.Ct.App.2002) (citation omitted). Officer Jerrell's testimony was not introduced for the purpose of proving the truth of the assertion but to show why he was at Jackson's residence. We recognize that an accused has the right to broad and extensive cross-examination of the witnesses against him. Caston v. State, 823 So.2d 473, 491(¶ 50) (Miss.2002) (citations omitted). However, when an officer's testimony about the substance of a conversation with an informant is offered to show the reason for the officers's presence at the scene of investigation, an informant's tip is admissible to show why an officer acted as he did and was present at the said scene. Clemons, 732 So.2d at 888(¶ 21). Accordingly, we find no merit to this issue.

III. EVIDENTIARY CHAIN OF CUSTODY
¶ 10. Jackson maintains that the trial court erred in allowing into evidence exhibit S-7 depicting cocaine seized by Officer Moore. Jackson claims that the State failed to establish the proper chain of custody of the cocaine because Officer McGinty, who initially found the cocaine, was not called before the court to provide a positive identification. Consequently, he claims the exhibit was inadmissible.
¶ 11. We first note that the State does not have to produce every person who handled the evidence. Butler v. State, 592 So.2d 983, 985 (Miss.1991). Furthermore, the burden is on the defendant to show that the evidence in question has been tampered with or improperly substituted. Johnson v. State, 816 So.2d 436, 441(¶ 27) (Miss.Ct.App.2002). Jackson offered no such proof of either a break in the chain of custody or any tampering with the evidence at issue.
¶ 12. Moore testified that, although the cocaine depicted in exhibit S-7 was discovered by McGinty he collected the evidence at the scene. Moore's name was the other name on the consent to search form, which shows that he was there from the beginning of the search when McGinty discovered said evidence.

IV. EXPERT TESTIMONY
¶ 13. Jackson maintains that the trial court erred in allowing Moore to testify as an expert in the field of fingerprinting, *1115 claiming that he was not tendered as an expert witness and lacked specialized knowledge to determine whether certain surfaces can be fingerprinted.
¶ 14. During the cross-examination of Moore, Jackson's counsel repeatedly asked Moore whether he has requested fingerprints on the packaging containing the substance, and in his closing, Jackson's counsel declared facts not in evidence by telling the jury that "all they had to do was try . . . The DEA and their national crime lab could have printed that stuff. They could have found out whether Kado Jackson's prints were on there, but they didn't." As such facts were not in evidence, these statement could have conceivably confused the jury, and thus Moore's personal perception, which he presented in redirect, that it is difficult to get fingerprints off of the plastic surfaces was helpful to clearly understand his testimony given on cross-examination as required by Rule 701 of the Mississippi Rules of Evidence.
¶ 15. The relevancy and admissibility of evidence rests within the discretion of the trial court and reversal is warranted only where that discretion has been abused. Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000). A police officer may testify as a lay witness to his own perception. Stringer v. State, 862 So.2d 566, 568(¶ 8) (Miss.Ct.App.2004); Christian v. State, 859 So.2d 1068, 1071(¶ 7) (Miss.Ct.App.2003). According to Rule 701, a lay witness may testify in the form of opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Christian, 859 So.2d at 1071(¶ 7). Accordingly, Officer Moore's opinion testimony was admissible under Rule 701, and the trial court exercised proper discretion.

V. JURY INSTRUCTION S-6
¶ 16. Jackson maintains that the trial court erred in giving jury instruction S-6, directing the jury to consider the "street value" of the substance found in his house when determining whether the substance was possessed with intent to distribute. More specifically, Jackson claims the court erred based on the fact that Assistant District Attorney Ben Saucier submits that there is no basis in the law for street value of a substance, but nonetheless the State submits said instruction reflecting that street value is an element in determining intent to distribute. Jackson argues that the instruction misinformed the jury, thereby prejudicing his defense.
¶ 17. Jackson's contention, however, is unfounded. This Court has expressly stated that the jury can consider the street value of such controlled substance. In Bryant v. State, 746 So.2d 853, 863(¶ 39) (Miss.Ct.App.1998), a similar instruction was given to the jury, which read as follows: "In determining whether the substance was possessed with intent to distribute, you may, but are not bound to, consider any or all of the following factors along with all of the other evidence in this case: (1) The quantity of the substance possessed, (2) The manner of packaging of the substance, (3) Evidence of the typical number of dosage units that could be made from the substance, (4) The street value of the substance." Id. The court held that the instruction properly instructs the jury that they may consider the street value of the substance when determining whether a defendant possessed an intent to distribute. Id. at(¶ 40). Therefore, this issue is without merit.

*1116 VI. EXHIBIT S-8
¶ 18. Jackson maintains that the trial court erred in admitting exhibit S-8, which was a plat. Jackson argues that Sellers, a city engineer, who was tendered as an expert witness, was allowed to testify as to facts and measurements depicted on the plat; however, Sellers admitted that he did not actually make the measurements or draw the plat.
¶ 19. The Mississippi Rules of Appellate Procedure mandate that the arguments advanced by the parties' in their briefs shall contain their contentions with respect to the issues presented and their reasons for those contentions, with citations to any authorities, statutes, and/or parts of the record on which they relied. M.R.A.P. 28(a)(6); King v. State, 857 So.2d 702, 725(¶ 70) (Miss.2003); Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982). In his brief, Jackson cites to no relevant authority, and as to the authority to which he did cite, he failed to connect the law advanced therein with the facts of the case at bar. Accordingly, this issue is procedurally barred. King, 857 So.2d at 725(¶ 70).

VII. INDICTMENT
¶ 20. Jackson maintains that the trial court erroneously denied his motion for a directed verdict, claiming that the State failed to present proof of the crime advanced in the indictment. Section 41-29-142 of the Mississippi Code states, in relevant part, that the penalty for possession of drugs with the intent to distribute will be enhanced if the act is committed "within one thousand five hundred (1,500) feet of, a building or outbuilding which is all or part of ... any church ... or within one thousand (1,000) feet of, the real property comprising ... any church...." Miss. Code Ann. § 41-29-142(1) (Rev.2001). Jackson claims that a directed verdict was proper because the indictment charged him with possession "within 1,500 feet of the real property comprising a church[,]" thereby combining distinct components of two distinct factors warranting an enhanced penalty.
¶ 21. The fundamental purpose of an indictment is to provide an individual with enough information to adequately prepare his defense. Westmoreland v. State, 246 So.2d 487, 489 (Miss.1971). The indictment gave proper notice to Jackson, even though it contained an error of imprecise language. Jackson did not claim that the actual distance between his house and the church was farther than that prescribed in the statute for justifying an enhanced penalty. Therefore, if any such error resulted, we find it to be harmless.

VIII. JURY INSTRUCTIONS
¶ 22. Jackson maintains that the trial court erred in giving instructions S-1A and S-3A and in refusing instruction D-17. He claims that both S-1A and S-3A contain the same objectionable language regarding the element of possession, wherein the jury was instructed that the evidence presented must show that "Jackson, alone or in conjunction with another, did possess said amount of Cocaine...." (emphasis added). Instruction D-17 cautioned the jury, when determining whether statements made by the defendant, subsequent to the commitment of crime in issue, were made knowingly and voluntarily, and such statements necessitate a subjective standard of review, which requires considering all surrounding circumstances, such "as the age, sex, training, education, occupation, and physical and mental condition of defendant, his treatment while under interrogation, and all the other circumstances in evidence surrounding the making of the statement."
*1117 ¶ 23. In determining whether reversible error lies in the granting or refusing jury instructions, we must review the instructions given by the trial court and read them as a whole. Ortman v. Cain, 811 So.2d 457, 459(¶ 5) (Miss.Ct.App. 2002). If said instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Id. From our review, we can only conclude that the trial court committed no such error. The indictment states "[K]ado James Jackson [and] Roderick Romerias Wilborn . . . . did knowingly, willfully, unlawfully, and feloniously possess more than 30 grams of Cocaine. . . ." Jackson's argument, as to S-1A and S-3A, accordingly lacks merit because the indictment clearly charged him in conjunction with "another" individual. Furthermore, the instruction conformed to the evidence because the jury was at liberty to find that he either acted alone or in conjunction with another. Jackson's argument as to D-17 is equally without merit because the courts are not required to give such separate instruction when the defendant offers his confession. Scott v. State, 878 So.2d 933, 968-69 (¶¶ 96-97) (Miss.2004).

IX. CLOSING ARGUMENT
¶ 24. Jackson maintains that the trial court erred in preventing his attorney from questioning during closing arguments the State's reasoning for refraining from calling certain individuals to testify at trial, which supported his theory of defense. Jackson believes the court erred when sustaining the State's objection that said closing was improper because Jackson had subpoena power available to him.
¶ 25. In his brief, Jackson cites to no relevant authority to support his claim, and as to the authority to which he did cite, he failed to connect the law advanced therein with the facts of the case that concern this issue. Accordingly, this issue is procedurally barred. King, 857 So.2d at 725(¶ 70).

X. SENTENCING
¶ 26. Jackson claims that the trial court erred by sentencing him to a term in excess of the recommended sentence proposed by the State during the plea bargaining process, during which he rejected the offer and proceeded to trial. Jackson argues that the court punished him for exercising his right to a trial by jury. Additionally, he argues that the trial court erred while sentencing him because the court indicated that it was evident that Jackson was a major player in the drug market.
¶ 27. Jackson is procedurally barred from now raising this issue because he failed to object on this basis at the time of sentencing. Livingston v. State, 525 So.2d 1300, 1303 (Miss.1988); Wright v. State, 856 So.2d 341, 343(¶ 7) (Miss.Ct.App. 2003). However, even if not barred, the argument he advances is meritless. In sentencing, a court may only consider legitimate factors and cannot base the sentence, wholly or partially, on the defendant exercising his constitutional right to a trial by jury. Fermo v. State, 370 So.2d 930, 932 (Miss.1979). The imposition of a sentence following a criminal conviction is a matter within the discretion of the circuit court, subject to only statutory and constitutional limitations. Ferrell v. State, 810 So.2d 607, 612(¶ 23) (Miss.2002). Therefore, we cannot say that the trial court abused its discretion.

XI. CRUEL AND UNUSUAL PUNISHMENT
¶ 28. Jackson argues that his sentence is clearly disproportionate to the crime of which he is convicted, and further claims his sentence amounts to cruel and unusual punishment. The trial court was *1118 provided with a pre-sentence report that contained a list of fifteen defendants who had been sentenced by the court in 2003 on similar crimes. Jackson argues that since the longest of these sentences was five years while his sentence is much longer, so the case should be remanded for further consideration of the sentence imposed.
¶ 29. Declaring that a sentence violates the Eight Amendment to the U.S. Constitution carries a heavy burden and only in rare cases should courts make such a finding. Stromas v. State, 618 So.2d 116, 123 (Miss.1993). An appellate court will generally refrain from disturbing a sentence unless it exceeds the statutory limits as prescribed by law. Edwards v. State, 615 So.2d 590, 597 (Miss.1993); Allen v. State, 826 So.2d 756, 761(¶ 17) (Miss. Ct.App.2002). Section 41-29-139(g)(1) of the Mississippi Code of 1972, as amended, dictates that any person convicted of trafficking in controlled substances shall be guilty of a felony and sentenced to not more than a term of thirty years. Section 41-29-142(1) authorizes an enhanced penalty for any person who is convicted of possession of a controlled substance with intent to transfer or distribute the substance of thirty years as authorized by Section 41-29-139(b) of the Code and, in the discretion of the court, a term of up to twice that authorized by said Section 41-29-139(b). The circuit court sentenced Jackson to sixty years in the MDOC for the possession of more than thirty grams of cocaine with intent to transfer or distribute within 1,500 feet of a church, with fifty to serve and ten to be suspended on post-release supervision, thus his sentence is within the statutory limits and is not disproportionate to the crime he committed.

XII. CUMULATIVE ERROR
¶ 30. Jackson maintains that the cumulative effect of the errors committed by the trial court were of prejudicial effect and prevented him from receiving a fair trial. In McFee, the court found that as there was no reversible error in any part, there is no reversible error to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). Jackson cites Byrom v. State, 863 So.2d 836 (Miss.2003) to support his position. However, Byrom is a death penalty case, in which the court found three errors, each of which did not warrant reversal when considered individually, and the errors did not reach the level necessary to reverse when considered cumulatively. Id. at 884(¶ 176). This error assigned fails for lack of merit.
¶ 31. This case is affirmed as to all issues.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF POSSESSION OF MORE THAN THIRTY GRAMS OF COCAINE WITH INTENT TO TRANSFER OR DISTRIBUTE WITHIN 1,500 FEET OF A CHURCH AND SENTENCE OF SIXTY YEARS, WITH FIFTY YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TEN YEARS SUSPENDED ON POST-RELEASE SUPERVISION AND FINE OF $25,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
LEE AND MYERS, P.JJ., CHANDLER, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SOUTHWICK, IRVING AND ROBERTS, JJ., NOT PARTICIPATING.