752 So.2d 435 (1999)
Arthur RATCLIFF, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01120-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*436 Joseph A. Fernald Jr., Brookhaven, B. Calvin Cosnahan, II, McComb, Attorneys for Appellant.
Office of the Attorney General by John R. Henry Jr., Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
DIAZ, J., for the Court:
¶ 1. Arthur Ratcliff, Jr. was convicted of one count of manslaughter by culpable negligence and one count of shooting into a motor vehicle. On appeal he contends (1) that the trial court erred in overruling his motion for a directed verdict made at the close of the State's case and renewed at the close of trial, (2) the verdict of the jury was against the overwhelming weight of the evidence, and (3) the trial court erred in excluding from the evidence a prior inconsistent statement made by a witness for the prosecution. We find these contentions meritless and affirm.

FACTS
¶ 2. The following are the facts that are most consistent with the verdict. On August 5, 1997, Arthur Ratcliff, Jr. and Marcus Marzette were on their way to a party in Brookhaven, Mississippi. While en route, they observed a truck driven by Thomas Marks and proceeded to follow it. Passengers in the truck included Tobias Smith, who was riding up front with *437 Marks, and Giavaunte Nelson, Paul Butler, Dexter Ratcliff, and Titus Washington who were all riding in the back of the truck. Ratcliff flashed his headlights and Marks pulled his vehicle to the side of the road. Marks and Washington then got out of the vehicle and spoke to Ratcliff, informing him that the party had been moved to New Sight Road because of noise complaints from neighbors.
¶ 3. Ratcliff followed the truck and, after a while, again flashed his headlights. The truck stopped and Marzette and Ratcliff exited their vehicle. Words were exchanged between Marzette and Washington concerning an earlier incident where Washington's brother held a gun on Marzette while Washington beat him. Washington, who had remained in the back of the truck throughout the incident, urged Marks to leave, stating "let's go to the party." Ratcliff then threw a beer bottle at Washington. As the truck was leaving, Ratcliff fired shots at the vehicle, striking Titus Washington in the chest. Bullets also struck the truck's rear windshield and tailgate. Ratcliff and Marzette continued to follow the truck until it pulled over at an old store. Aware that they were being followed, the truck's occupants, including the wounded Washington, exited the vehicle and ran. Ratcliff and Marzette observed Washington lying face down on the ground near the store, bleeding profusely. They then returned to their vehicle and left. After approximately twenty minutes, Marks, Butler, and Dexter Ratcliff returned to the truck and took Washington to the hospital where he later died.
¶ 4. At trial, Ratcliff presented an alibi defense. Shon Blackwell testified that Ratcliff could not have been involved in the shooting which occurred at approximately 10:38 p.m. because Ratcliff was at his home with him in Bogue Chitto at that time. Blackwell stated that Ratcliff arrived at his home at approximately 9:00 p.m. that evening. Ratcliff then left with Greg Lewis around 9:30 to purchase liquor, returning at 10:15. He remained at Blackwell's home until 10:50 when he left to pick up his girlfriend Yolanda at work. He and Yolanda then returned to Blackwell's at 12:15 a.m. Greg Lewis and Ratcliff himself testified to substantially the same version of events. Yolanda Sanders confirmed that Ratcliff picked her up from work at 11:00 p.m.
¶ 5. Ratcliff was indicted for the offenses of murder and shooting into a motor vehicle. Following a trial held in the Lincoln County Circuit Court, the jury convicted Ratcliff of the lesser offense of manslaughter by culpable negligence. He was also convicted of shooting into a motor vehicle. Ratcliff was sentenced to a term of twenty years for manslaughter and five years for shooting into a motor vehicle to run consecutively to the sentence imposed for manslaughter.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN DENYING RATCLIFF'S MOTION FOR A DIRECTED VERDICT
¶ 6. Ratcliff claims that the trial court erred in denying his motion for a directed verdict made at the close of the State's case and renewed at the conclusion of trial. He contends that because the statements of the prosecution's witnesses were so inconsistent, the court should have concluded as a matter of law that a reasonable doubt existed as to the material facts of the State's case.
¶ 7. Ratcliff does not cite any authority in support of his argument. The Mississippi Supreme Court has held that where a party fails to cite case law in support of his argument, we are not bound to address his assertions of error. Hewlett v. State, 607 So.2d 1097, 1107 (Miss.1992). Procedural bar notwithstanding, Ratcliff's contention is baseless.
¶ 8. A motion for a directed verdict challenges the legal sufficiency of the evidence offered to that point of trial to sustain a guilty verdict. Bailey v. State, *438 729 So.2d 1255, 1264 (Miss.1999). Following the denial of his motion for directed verdict, Ratcliff offered evidence in his own defense, thereby waiving his challenge to the sufficiency of the State's evidence up to that point in time. Stringer v. State, 557 So.2d 796, 797 (Miss.1990). This, however, does not preclude him from challenging the weight or sufficiency of the evidence to sustain the judgment against him. Id.
¶ 9. When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, the evidence is viewed in the light most favorable to the State, which also receives the benefit of any favorable inferences which may be reasonably drawn from the evidence. All credible evidence consistent with the guilty verdict is accepted as true. Johnson v. State, 642 So.2d 924, 927 (Miss. 1994). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty. Hart v. State, 639 So.2d 1313, 1318 (Miss.1994).
¶ 10. Ratcliff was convicted of manslaughter by culpable negligence as well as shooting into a motor vehicle. Miss.Code Ann. § 97-3-35 (Rev.1994) defines manslaughter as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Several eyewitnesses testified that Ratcliff fired his weapon into the vehicle approximately nine times. Another witness stated that Ratcliff confessed that he had shot at someone and "he didn't know if they were dead or alive."
¶ 11. The supreme court has held that pointing a deadly weapon at an individual and deliberately pulling the trigger constitutes a wanton disregard of human life and culpable negligence. Jernigan v. State, 305 So.2d 353, 354 (Miss.1974). There, the court explained that "[t]he evidence in this case establishes that defendant pointed a loaded gun at Clarence Bowers, and that the gun discharged, killing Bowers. Defendant's actions unequivocally show a conscious, wanton and reckless disregard of the likely fatal consequences of his willful act which created an unreasonable risk. The evidence overwhelmingly supports the jury's verdict of manslaughter." Id.
¶ 12. The evidence was legally sufficient to establish that Ratcliff was guilty of the offenses of manslaughter by culpable negligence and shooting into a motor vehicle. Witnesses testified that Ratcliff fired a weapon at least nine times into a motor vehicle which was occupied by six individuals. Though Ratcliff claims that the testimony of the witnesses for the State was inconsistent, he fails to point out these alleged inconsistencies. The testimony of the witnesses was in accord on one crucial fact, that Ratcliff fired shots into the truck, striking Titus Washington. The trial court did not err in denying Ratcliff's motion for a directed verdict.

II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 13. Ratcliff contends that a new trial is mandated by the jury's rejection of his alibi defense. He claims that "the jury did not give adequate weight to the testimony concerning his alibi"; thus the verdict was wholly against the weight of the evidence and was a result of bias and prejudice on the part of the jury.
¶ 14. The jury is under no obligation to accept an alibi defense. Tubbs v. State, 402 So.2d 830, 834 (Miss.1981). The resolution of the conflict between the State's evidence and the appellant's alibi was a question of fact for the jury to resolve. Lee v. State, 457 So.2d 920, 924 (Miss.1984). The jury obviously chose to believe the State's witnesses rather than those who testified on Ratcliff's behalf. This does not warrant a new trial.
*439 ¶ 15. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Thornhill v. State, 561 So.2d 1025, 1030 (Miss. 1989). As we discussed above, there was testimony from eyewitnesses that Ratcliff fired at the vehicle. There is sufficient evidence to support the jury's verdict.

III. WHETHER THE TRIAL COURT ERRED IN EXCLUDING THE PRIOR INCONSISTENT STATEMENT OF PROSECUTION WITNESS GIAVAUNTE NELSON
¶ 16. Ratcliff argues that under Mississippi Rule of Evidence 801, he should have been allowed to introduce into evidence a prior inconsistent statement of prosecution witness Giavaunte Nelson which was given to police two days after the shooting. He asserts that because the State's case consisted of eyewitness identifications and no physical evidence, it was reversible error to exclude the statement.
¶ 17. M.R.E. 801(d)(1)(A) provides that a prior statement is not hearsay and is admissible if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition...." The State responds that M.R.E. 801 is inapplicable for two reasons. First, in order for a prior inconsistent statement to be admissible under M.R.E. 801(d)(1)(A), there must be a contradiction in fact between the testimony and the prior statement. Second, the prior statement must have been sworn.
¶ 18. There is no apparent contradiction between Nelson's prior statement and his testimony at trial. "It is generally held that a statement `is inconsistent if under any rational theory it might lead to any relevant conclusion different from any other relevant conclusion resulting from anything the witness said.'" Marcum v. Miss. Valley Gas Co., Inc., 587 So.2d 223, 226 (Miss.1991) overruled on other grounds (citing 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE, ¶ 613[02] (1990)). Another author suggests the following test: "Prior inconsistent statements are not limited to those which are directly contradictory; it is sufficient if the inconsistency has a reasonable tendency to discredit the testimony of the witness." M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6582 (Interim Edition) (1992).
¶ 19. In the instant case, Ratcliff fails to prove that Nelson's first statement is inconsistent with his trial testimony. In fact, he does not even inform us which statements he considers to be contradictory. A review of Nelson's prior statement and his trial testimony reveals no inconsistencies. The only inconsistencies which arguably exist relate to (1) whether the victim, Titus Washington, was sitting on the bed of the truck or on the fender well and, (2) whether Nelson was lying down when the shooting began or whether he laid down immediately thereafter. These supposed discrepancies were adequately brought out on cross-examination. We do not find that they have a reasonable tendency to discredit the testimony of Giavaunte Nelson.
¶ 20. Ratcliff similarly fails to establish that Nelson's prior statement was given under oath, another prerequisite to admissibility under M.R.E. 801(d)(1)(A). The record reveals that the statement was given to police two days after the shooting. We have no reason to believe that it was made under oath.
¶ 21. The State suggests that Ratcliff is really attempting to proceed under M.R.E. 613(b) which provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is *440 afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2)." Because we have already found that the prior statement is not inconsistent with Nelson's testimony at trial, M.R.E. 613(b) is inapplicable as well.
¶ 22. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I MANSLAUGHTER BY CULPABLE NEGLIGENCE AND COUNT II SHOOTING INTO A VEHICLE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT I AND FIVE YEARS ON COUNT II TO RUN CONSECUTIVE TO SENTENCE IMPOSED IN COUNT I, ALSO TO RUN CONSECUTIVE TO PROBATION REVOCATION IN CAUSE NUMBER 11,965B, AND $1210 RESTITUTION TO LINDA REAVES FOR FUNERAL EXPENSES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.