835 So.2d 118 (2003)
Lois EVERETT, Jr. a/k/a Loyce Everett, Jr. a/k/a Loyce Everett, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01356-COA.
Court of Appeals of Mississippi.
January 21, 2003.
*119 Leslie D. Roussell, Laurel, attorney for appellant.
Office of the Attorney General, by Deirdre McCrory, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Lois Everett was convicted of aggravated assault and possession of a firearm by a felon in the Wayne County Circuit Court. Everett has appealed his conviction raising the following issues:

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ALLOW THE DEFENDANT TO INTRODUCE EXTRINSIC EVIDENCE OF A PRIOR INCONSISTENT STATEMENT BY THE STATE'S WITNESS *120 MATTHEW CARL "NIKKI" HAYES.

II. THE TRIAL COURT VIOLATED THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY NOT USING THE PROPORTIONALITY ANALYSIS BEFORE SENTENCING THE DEFENDANT TO TWENTY-THREE YEARS IN PRISON.
Finding no error, we affirm.

FACTS
¶ 2. Lois "Bobo" Everett was indicted by a grand jury convened in Wayne County Circuit Court for the crime of aggravated assault and possession of a firearm by a felon. On March 10, 2001, a jury found Everett guilty and he was sentenced to twenty-three years' imprisonment.
¶ 3. On Saturday May 6, 2000, Everett, Bobby Shon Smith, and their two girlfriends went to the Cornfield Club, a local nightclub, located in Wayne County, Mississippi. Everett claims they were seated at a table when Anthony Sumlin walked by and spilled his drink on their table and on Everett's girlfriend. Choice words were exchanged between the two. Later in the night, around 11:30 p.m. a fist fight ensued, each claiming the first punch was thrown by the other party. Both testified that other patrons joined in the brawl. "Nikki" Hayes, the club's bouncer, broke up the fight.
¶ 4. Shortly thereafter, around 12:00 a.m., Sumlin said he was leaving the building when he heard someone yell, "he's got a gun!" Looking up, Sumlin said he saw Everett pointing a gun at him. He testified Everett fired a shot hitting him in his shoulder. The State's witness, "Nikki" Hayes, testified that he also saw Everett shoot Sumlin. Everett testified that he was driving out of the parking lot when he heard the gunshot. Defense witness, Bobby Shon Smith, testified that he saw Everett getting into his car when the shot was fired.

LAW AND ANALYSIS

I. WHETHER THE TRIAL JUDGE ERRED IN DENYING HAYES'S AFFIDAVIT INTO EVIDENCE.
¶ 5. Everett complains that the circuit judge committed reversible error in refusing to allow Hayes's unsworn affidavit into evidence. Everett contends that there were two inconsistencies between Hayes's testimony and his affidavit, and that he was entitled to show the jury the affidavit. Everett argues that the two inconsistencies of Hayes's testimony concern escorting the victim and the defendant outside the club and Hayes's location when the gun was fired.
¶ 6. "The trial court is granted substantial leeway in controlling the admission of evidence." Moran v. State, 822 So.2d 1074, 1077(¶ 8) (Miss.Ct.App.2002). "The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." Ivy v. State, 641 So.2d 15, 18 (Miss.1994). According to Rule 103, "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." M.R.E. 103. Unless the trial judge's "discretion is so abused as to be prejudicial to the accused, this Court will not disturb the trial court's ruling on appeal." Hansen v. State, 592 So.2d 114, 132 (Miss.1991).
¶ 7. Mississippi Rules of Evidence 613 allows the impeachment of witnesses with their prior inconsistent statements in two ways. The first is by reading the statement to the witness and asking whether that statement accurately reflects the testimony given on the occasion when the *121 statement was recorded. M.R.E. 613(a). On the other hand, a party may use extrinsic evidence. M.R.E. 613(b). This can be done by putting on other witnesses who will introduce facts discrediting the previous witness's testimony. Rule 613(b) states:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
¶ 8. Everett argues that Hayes made a prior inconsistent statement concerning the removal of the victim and defendant from the club. He points out that in Hayes's sworn testimony Hayes stated he removed Everett from the bar first and left Sumlin inside by the door for a while before removing him. Everett contends this is inconsistent with the affidavit Hayes gave Officer Robert Owen which stated Hayes grabbed both and took them outside the club.
¶ 9. On direct examination Hayes testified as follows:
Q. Okay. And what about "Bobo" [Everett]? What did you do with "Bobo"?
A. I got him outside the club
Q. Okay. What about Mr. Sumlin?
A. All right. I toldwell, he was to the door. He got right to the front door.
Q. He was right there at the front door.
A. Yes, ma'am
Q. Okay. The person that you've identified as "BoBo," when you told him to leave the club, did hewhat did he do then?
A. They went outside. We got him outside, and I told him he couldn't come back in the club because we was closing up, and the other guy was stillyou know, Mr. Sumrall [Sumlin] still up in the club.
. . .
Q. Okay. And after that, what was the next thing that happened?
A. All right. I got them outside and really the fight was over with, you know.
¶ 10. On cross-examination Hayes testified as follows:
Q. In a statement that you gave to Robert Owen, you said that after the fight was broke up, you got Sumlin and Everett and took them both outside and then you didn't let nobody else into the club because the club was closing.
A. It was closing down.
Q. So is that right? Do you remember saying that to Mr. Owen?
A. Whatever I stated to him, that's what I told him.
Q. Well, I don't want nobody to think I'm trying to make you say something you're not, so I'm going to let you read it as soon as I find it.
[Pause in proceedings]
Q. It pretty much starts right there where the pen is (indicating). You can hold onto it. In that statement, that's the statement that you gave to Robert Owen when he interviewed you about what had happened?
A. Yes, sir.
Q. And in it, you said that you took Mr. Everett and Mr. Sumlin outside the club?
A. That's right.
Q. Okay. And you agree that you said that to him, that you took them out the club that night?

*122 A. I took them outside.
Q. That's all I wanted to talk about on that. A while ago, you said you never took Mr. Sumlin outside. I don't know if it's a big deal or not. It's just inconsistencies.
A. You can't take them out but one at a time. You know what I'm talking about? They was tied up fighting and I got them outside.
¶ 11. Before a party may impeach a witness under Rule 613(b) there must be an actual contradiction in fact between the testimony and the prior statement. Ratcliff v. State, 752 So.2d 435, 439 (¶ 17) (Miss.Ct.App.1999). It is generally held that a prior statement is inconsistent if under any rational theory its introduction might lead to a conclusion different from the witness's testimony. Id. at (¶ 18). The Court has also stated that if the prior statement has a reasonable tendency to discredit the witness's testimony then the statement is considered inconsistent. Id.
¶ 12. In the instant case, Everett fails to show Hayes's prior statement is inconsistent with his trial testimony. In his testimony on cross-examination, Hayes clarifies what was meant by taking them "both outside." We do not find that Hayes's prior statement concerning the escorting of the victim and defendant outside has any reasonable tendency to discredit his testimony. Therefore, Hayes was never impeached concerning his testimony about the escorting of the men outside the club.
¶ 13. Everett also contends that Hayes was impeached due to his testimony concerning where he was standing when the shot was fired. He points out that in Hayes's sworn testimony he stated he was standing by his car which was five or six feet from the door where Sumlin was shot. However, in his affidavit, when asked where he was in relation to the shooting, he said he was standing by the white house next to the club which was 25 to 30 feet away from the shooting.
¶ 14. After Hayes was excused, the State called Officer Owen to the stand. On cross-examination, defense counsel asked Owen to read the three paragraphs he wrote after questioning Hayes about the night of the shooting. The State's attorney objected claiming it was hearsay. Everett's attorney said the purpose of reading the affidavit was to show by extrinsic evidence that Hayes had made prior inconsistent statements. He then claimed he did not have the statements read by Hayes because when Hayes was asked to read the portion of the affidavit concerning his escorting of the two men from the club he was reluctant. Everett's attorney explained that he attributed this reluctance to the fact that the witness probably could not read.
¶ 15. The court overruled the State's objection and allowed the officer to read the statements from the affidavit the defense counsel believed were inconsistent with Hayes's sworn testimony. The defense counsel asked the officer to read the last paragraph of the affidavit:
On Monday, July 24, 2000, Owen again talked to Hayes. This time Owen asked a few questions that Owen had since Owen first interviewed Hayes. Owen asked Hayes where was Hayes when the shooting took place and where was the subjects at. Hayes told Owen that Hayes was standing over by the white house that is next to the club. Owen asked Hayes how long had Hayes known Everett and Hayes stated about ten years. Owen asked if Hayes could see Everett good that night and Hayes said that Hayes could see Everett good. Owen asked how far away was Hayes *123 from Everett when Everett shot Sumlin. Hayes stated that Hayes was about 25 to 30 feet.
¶ 16. The defense attorney then asked for the affidavit to be submitted into evidence considering it directly contradicted Hayes's statement that he was six feet away standing by his car when the gun was fired. The trial judge denied his request claiming that it was "rank hearsay."
¶ 17. Rule 613(b) will not allow extrinsic evidence to be used to prove a prior inconsistent statement unless the witness is afforded an opportunity to explain or deny it. M.R.E. 613(b). The rule does not establish a particular time for denial or explanation. However, Mississippi case law indicates that some foundation must be laid before impeachment testimony will be permitted. Whigham v. State, 611 So.2d 988, 994 (Miss.1992). If counsel for a party desires to impeach the testimony of a witness with a pretrial, out-of-court statement that is inconsistent with his trial testimony, "it is only fair that the witness, while he is on the stand, be asked about it, and be given an opportunity to explain or deny it." Id. In the instant case, defense counsel failed to lay such a predicate when Hayes was on the stand.
¶ 18. On direct examination Hayes testified as follows:
Q. Okay. And when you saw "BoBo" with a gun, what did you do at that point?
A. Well, when I seen him with the gun and thenwhen I seen him with the gun, I was standing by my car and people was running, so what itit happened so quick, you know, andyou know, wasn't nothing I could do.
. . .
Q. Okay. Where was Mr. Sumlin when he was hit?
A. He was standing side the club on the outside of the door.
¶ 19. On cross examination Hayes testified as follows:
Q. When you heard the gunshot go off, exactly where were you standing?
A. Right there by my car, maybe maybe five or six feet from the door.
Q. Your car was five or six feet from the door, so about where I am to the door?
A. That's about right.
¶ 20. Hayes was never questioned about his statements made to Officer Owen concerning Hayes's location at the time of the shooting. Because no foundation was laid, the statement was improperly read into evidence. Whether the document itself should have been entered into evidence was properly decided by the trial court.

II. WHETHER THE TRIAL JUDGE VIOLATED THE EIGHTH AMENDMENT BY SENTENCING THE DEFENDANT TO TWENTY-THREE YEARS.
¶ 21. Everett argues that the trial court should have applied the proportionality analysis established by the United States Supreme Court in Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), before sentencing the defendant to twenty-three years' imprisonment. By not following the analysis, Everett contends that the sentence was excessive and violative of his constitutional rights. He cites the Eighth Amendment of the United States Constitution which restricts cruel, unusual and excessive punishment. U.S. CONST. amend. VIII. In reviewing sentences, this Court will not engage in analyzing a sentencing order unless it is considered constitutionally disproportionate or not within the statutory *124 limits. Davis v. State, 724 So.2d 342, 345 (¶¶ 10, 14) (Miss.1998).
¶ 22. In Solem, 463 U.S. at 290, 103 S.Ct. 3001, the court held that a criminal sentence must not be disproportionate to the crime for which the defendant is being sentenced. The defendant in that case had been convicted of six non-violent felonies prior to writing a bad check. Id. at 282, 103 S.Ct. 3001. The South Dakota trial court sentenced the defendant to life without parole pursuant to that state's habitual offender statute. Id. The United States Supreme Court held the sentence to be excessive and violative of the defendant's constitutional rights. Id. at 303, 103 S.Ct. 3001.
¶ 23. The court outlined a three prong analysis to assist lower courts in determining whether an imposed sentence violates the Eighth Amendment by being excessive. The three prong analysis is as follows: "(1) look at the gravity of the offense and the harshness of the penalty, (2) compare the sentences imposed on other criminals in the same jurisdiction, and (3) weigh the sentences imposed for the commission of analogous crimes in other jurisdictions." Id. at 290, 103 S.Ct. 3001.
¶ 24. Mississippi like South Dakota has an habitual offender statute. Mississippi's statute reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution whether in this state or elsewhere shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-81 (Rev.2000).
¶ 25. In Clowers v. State, 522 So.2d 762, 765 (Miss.1988), the Mississippi Supreme Court recognized the proportionality analysis. Despite the habitual offender statute the court stated that under the Supremacy Clause the court has the authority to review sentencing guidelines as expressed in Solem. Id. The defendant in Clowers was an habitual offender who was convicted of forging a $250 check. Id. at 763. As an habitual offender, the defendant was subject to the mandatory maximum forgery sentence of fifteen years without parole. Id. The trial court imposed a sentence of less than fifteen years on the grounds that the mandatory maximum sentence would be disproportionate to the crime. Id.
¶ 26. After affirming the trial court sentencing order, the Mississippi Supreme Court warned that this decision should not be construed too broadly. Id. at 765. The court stated that this "does not represent a de facto grant of sentencing discretion, but, rather, ties proportionality to the three-step analysis outlined therein." Id. Mississippi case law following Clowers has limited its scope. Barnwell v. State, 567 So.2d 215, 221 (Miss.1990); Bell v. State, 769 So.2d 247, 252(¶ 13) (Miss.Ct.App. 2000). In Barnwell, 567 So.2d at 221, the Mississippi Supreme Court stated that the ruling in Clowers is limited to its "own distinctive facts and procedural posture." In Bell, 769 So.2d at 252(¶ 12), this Court held that the holding in Clowers is not the "rule but the exception." It also stated that Clowers did not establish a "litmus test of proportionality." Id.
¶ 27. Clowers is distinguishable from the case at bar. In Clowers the defendant forged a check, in this case the defendant shot a man. As the trial judge stated, "Had that bullet struck three or four *125 inches lower down on the body of Mr. Sumlin he would not be here with us. He would be dead."
¶ 28. We find the trial judge's sentencing order constitutional and within the statutory limits. Therefore, we affirm.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS AND COUNT II POSSESSION OF A FIREARM BY A FELON AND SENTENCE OF THREE YEARS ALL AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $730 IS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO COUNT I AND ANY OTHER SENTENCE PREVIOUSLY IMPOSED. COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.