# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02016-SCT

*DONNIVER TERRELL JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2003 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL  -  FELONY |
| DISPOSITION: | AFFIRMED - 01/27/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Donniver Terrell Johnson (Johnson) was convicted by a jury for the sale of a controlled substance, more than one ounce of marijuana, and sentenced by the Circuit Court of Leake County, Mississippi, to serve 20 years in the custody of the Mississippi Department of Corrections.

¶2.     The trial court denied Johnson's motion for a new trial or other relief.   Johnson now appeals his conviction and sentence to this Court.

## FACTS

¶3.     Mississippi Bureau of Narcotics agent Vernell Dedeaux (Agent Dedeaux) testified that on January 24, 2003, he went with a confidential informant, Michael Hutchins, to Wiggins Loop Road in Carthage, Mississippi, to buy illegal drugs.  Agent Dedeaux was wired with a body transmitter to record the transaction.  A telephone call was placed on a cell phone to Johnson inquiring about the purchase of drugs.  The informant referred to Johnson as "Slick."

¶4.     Agent Dedeaux and the informant got into a blue Ford F-150 truck with Johnson parked in front of a tan house with maroon shutters on Wiggins Loop.  Mississippi Bureau of Narcotics agent Joey Mayes (Agent Mayes) conducted surveillance on Agent Dedeaux, the informant, and Johnson.  He heard the transactions via the transmitter.

¶5.     Agent Dedeaux paid $140 for the marijuana.  At trial, Agent Dedeaux positively identified Johnson as the man who had sold him the marijuana.  Lab technician Brandi Goodman testified that she examined the substance that was delivered to the Mississippi Crime Laboratory.  The analysis on the substance proved it to be marijuana in the amount of 45.6 grams.

¶6.     Shante Johnson, Johnson's wife, lived in the trailer behind her mother's tan house with maroon shutters on Wiggins Loop.  She testified that the blue Ford F-150 truck belonged to her, and Johnson had no access to the truck.  She stated that she and Johnson had a disagreement in October or November 2002, and that Johnson had not been back on the property since then, but they were still married.

¶7.     Jo Ann Boyd, Shante's mother, testified that the house on Wiggins Loop in Carthage

with the maroon shutters, identified by Agent Dedeaux's testimony, was her house. Boyd's daughter, Shante, lived in a trailer directly behind her house. She testified that since Shante "broke up" with Johnson in late 2002, Johnson had not been back to the property. She testified that the only blue Ford F-150 truck at her house was her daughter's. Boyd's goddaughter, Regina Thomas, and daughter, Erica Boyd, supported Boyd's testimony.

¶8. Johnson testified that he had not been back to Wiggins Loop Road since he and his wife had their disagreement. Johnson testified that after he was told to leave the trailer he had not been back. He testified that the blue truck belonged to his wife, and he did not have access to it. He denied that he was the one who sold marijuana to Agent Dedeaux in January 2003.

¶9. Deputy Sheriff Tony Smith testified on rebuttal that on March 13, 2003, he went to Wiggins Loop in Carthage to arrest Johnson. He did not locate him at that time, although he did speak to Johnson's mother-in law, Boyd. Boyd told him that Johnson had been at the trailer, which sat behind her house, the day before.

¶10. Agent Mayes also testified on rebuttal that he was also present when Boyd told Deputy Smith that Johnson had not stayed there in two weeks, but she told them that the day before Johnson had been at the trailer. The defense objected and moved for a mistrial, but the trial court denied the motion.

¶11. Later, Boyd was recalled by the defense on surrebuttal. She denied having told the officers that Johnson had been there the day before the officers talked with her. She further denied giving any statement at all about Johnson to the officers.

¶12. Johnson was convicted on the sale of more than one ounce of marijuana and sentenced to 20 years in the custody of the MDOC. Johnson now appeals to this Court. Johnson contends

3

that Deputy Smith's and Agent Mayes's testimony as to Boyd's prior statement constituted reversible error without first affording Boyd the opportunity to claim or deny the prior statement. We disagree.

**DISCUSSION**

¶13. Boyd testified on direct for the defense that she had not seen Johnson on Wiggins Loop after Johnson and her daughter, Shante, had separated in the latter part of 2002. She testified that the police were called, and Johnson was banned from the property. After that day, Boyd testified that she had not seen Johnson on her property or anywhere on Wiggins Loop.

¶14. On cross-examination by the State, Boyd testified that Johnson and Shante were still married, and she did not have any knowledge of them getting a divorce. However, she stated that Johnson and Shante had "broke up." While, she was not sure of the date that they separated, she testified that she had not seen Johnson back since that day.

¶15. The State called Deputy Smith and Agent Mayes on rebuttal. The defense objected to Deputy Smith testifying as to Boyd's statement to him. The trial court allowed Deputy Smith's testimony to be given to the jury after the State proffered Deputy Smith's testimony outside the presence of the jury, overruling the defense's objection. Deputy Smith was questioned by the State as follows:

> Q: You spoke to his [Johnson's] mother-in-law, who lived in the house, Jo Ann Boyd.
> A: Yes, sir.
> Q: I believe that you said you had known her for several years.
> A: Yes, sir, I have.
> Q: Inquired of her [sic] about the whereabouts of Donniver Johnson. What did she tell you?
> A: Ms. Boyd told me that Donniver hadn't stayed at the trailer in a couple of weeks, but he was out there the day before getting something.

4

Q:      And this was in mid-March, when y'all were out there?
A:      Yes, sir.

¶16.    The defense renewed the objection and moved for a mistrial.  The trial court overruled the objection and the motion for mistrial.

¶17.    Agent Mayes similarly testified as follows when questioned by the State:

Q:      At that In [sic] time in mid-March, I believe it was March 13th, one of the persons that you went to attempt to arrest was Donniver Johnson on these charges we're hearing today; is that right?
A:      Yes, sir, that's right.
Q:      And you went to the house and trailer on Wiggins Loop?
A:      Yes, sir....
Q:       Did you see his mother-in-law out there?  Jo Ann Boyd?
A:      Yes, sir.
Q:      Were you present with Tony Smith when y'all inquired of her as to the whereabouts of Donniver Johnson?
A:      Yes, sir, I was.
Q:      What did she tell you?...
A:      She told us that he had not stayed there at the trailer for about two weeks, but that he had been there the day before to pick up something inside the trailer....

¶18.    The trial court overruled the defense's renewed objection and motion for mistrial.

¶19.    After the State rested on rebuttal, the defense called Boyd back to the stand on surrebuttal.  When questioned by the defense, Boyd testified as follows:

Q:      Ms. Boyd, there's been some testimony that in March of this year, specifically around March 13th, the law enforcement officers had a roundup where they arrested numerous people for drug offenses.  Do you understand that?
A:      Yes, sir.
Q:      Now, I ask you whether or not they came out to Wiggins Loop to your home and talked to you about Donniver Terrell Johnson?  Did any officer come and ask you about his whereabouts?
A:      No, sir.

> Q: Did you tell any officer, specially Officer Tony Smith or Officer Joey Mayes that Donniver Terrell Johnson hadn't stayed there at the trailer for about two weeks?
>
> A: I didn't give no [sic] such statement to no [sic] police officer about where he was. I did not.
>
> Q: Did you tell them that he had been around there the day before?
>
> A: I did not.
>
> Q: Okay. So if they received such information, they must have received it from somebody other than you; is that right?...
>
> A: I did not give a statement to anyone.

¶20. Johnson cites *Everett v. State*, 835 So.2d 118 (Miss. Ct. App. 2003), in support of his position. However, in *Everett*, the Court of Appeals stated:

> Mississippi Rules of Evidence 613 allows the impeachment of witnesses with their prior inconsistent statements in two ways. The first is by reading the statement to the witness and asking whether that statement accurately reflects the testimony given on the occasion when the statement was recorded. M.R.E. 613(a). On the other hand, a party may use extrinsic evidence. M.R.E. 613 (b). *This can be done by putting on other witnesses who will introduce facts discrediting the previous witness's testimony.*

*Id.* at 120-21 (emphasis added).

¶21. M.R.E. 613(b) does not provide that the witness has to *first* be afforded the opportunity to explain or deny the statement before the admission of extrinsic evidence of a prior inconsistent statement by a witness. *See* M.R.E. 613(b). The witness must only be afforded the opportunity to explain or deny the statement. *See* M.R.E. 613(b). The comment to M.R.E. 613(b) states that "the traditional insistence that the attention of the witness be directed to the statement on cross-examination is *relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine the statement, with no specification of any particular time or sequence*." M.R.E. 613(b) cmt. (emphasis added).

¶22.    Here, Deputy Smith and Agent Mayes were called to testify on rebuttal to Boyd's testimony that she had not seen Johnson since late 2002. The trial court allowed the defense to recall Boyd on surrebuttal. On surrebuttal, Boyd denied telling Deputy Smith and Agent Mayes that she had recently seen Johnson in March of 2003. In fact, she further denied ever speaking to Deputy Smith and Agent Mayes about Johnson or his whereabouts on the day in question.

¶23.    Boyd was provided the opportunity to explain or deny the prior statements. As such, the testimony of Deputy Smith and Agent Mayes did not violate M.R.E. 613(b) as alleged by Johnson on appeal. Therefore, we find that this assignment of error is without merit.

### CONCLUSION

¶24.    For the foregoing reasons, we affirm the judgment of the Circuit Court of Leake County, Mississippi.

¶25.    **CONVICTION OF SALE OF MORE THAN ONE OUNCE OF MARIJUANA AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**