910 So.2d 1103 (2005)
CITY OF JACKSON, Appellant,
v.
Chad E. CALCOTE, Appellee.
No. 2003-CA-01318-COA.
Court of Appeals of Mississippi.
January 11, 2005.
Rehearing Denied September 6, 2005.
*1106 Terry Wallace, Jackson, Sharon Diane Gipson, attorneys for appellant.
Charles Eric Malouf, Michael J. Malouf, Jackson, attorneys for appellee.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Chad Calcote filed a complaint against the City of Jackson in the County Court of Hinds County. Chad alleged that Jackson Police Department Officers used excessive force against him when they responded to a domestic disturbance call at Chad's parents' house. Ultimately, the county court found for the City of Jackson. Chad appealed to the Hinds County Circuit Court. The circuit court reversed the county court's decision and awarded Chad twenty-five thousand dollars. Aggrieved, the City of Jackson appeals and asserts the following issues:
I. DID THE CIRCUIT COURT ERR IN FINDING THAT SLADE MOORE WAS ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT OR THAT THE CITY OF JACKSON ADMITTED TO SAID ACTS BEING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT?
II. DID THE CIRCUIT COURT ERR IN FINDING THAT CALCOTE WAS NOT ENGAGED IN CRIMINAL ACTIVITY?
III. DID THE CIRCUIT COURT ERR IN FAILING TO CONSIDER THE DEFENSES AFFORDED BY MISSISSIPPI CODE ANNOTATED SECTION 93-21-28?
IV. DID THE COURT PROPERLY HOLD THAT CALCOTE WAS *1107 INJURED DURING A MELEE WITH OFFICERS?
V. DID THE CIRCUIT COURT ERR WHEN IT HELD THAT THE ACTIONS OF THE OFFICERS WERE UNREASONABLE AND NOT IN GOOD FAITH?
¶ 2. By way of his reply brief, Chad asserts that the City of Jackson's appeal is untimely. Chad asks this Court to dismiss the City of Jackson's appeal.

FACTS
¶ 3. On the night of May 24, 1997, Chad Calcote stayed home and watched movies with his fiancee and his fiancee's sister. Chad's mother, Lynn, called at approximately 10:00 p.m. and said that she and Chad's father, Charles, were arguing. Chad, set on dissolving the argument, got off the phone and went to his mother and father's house. However, Lynn also called 911 and reported a domestic dispute. As Chad made his way to his parents house, officers Billy Dilmore and Slade Moore of the Jackson Police Department had the same destination in mind. Chad arrived at his parents' house shortly before Officers Moore and Dilmore.
¶ 4. Regarding the events that took place at the Calcote's, the version that Chad and his parents relate is completely different from officers Moore and Dilmore. According to officers Moore and Dilmore, when the officers arrived, Charles and Chad met them at the door and indicated that there was no problem. Regardless, the officers voiced their concern for Lynn's well-being. Chad and Charles maintained that everyone inside was fine. The officers told him to move to the other side of the garage. Chad claims that he complied and never moved from that area. At this point, the two versions trail off in completely different directions.
¶ 5. The City of Jackson maintains that Chad and Charles refused to allow the officers entry into the Calcote home. The City states that, as a result, Charles was charged with disorderly conduct for disobeying a lawful order of a police officer, interfering with the duties of a sworn officer and resisting arrest. Chad was arrested for resisting arrest and disobeying the order of a police officer. The City argues that the confrontation resulted in a melee.
¶ 6. Chad states that the officers ordered Charles and Chad to lie face down on the concrete carport floor so they could be handcuffed. Chad alleged that officer Moore shoved Chad's face into the concrete floor, pressed his fingers into Chad's eyes and rolled Chad's face back and forth on the ground. As a result, three of Chad's front teeth broke.
¶ 7. In either event, the officers arrested Chad and Charles. Afterwards, Lynn came to the door. The officers asked Lynn if she was hurt. Lynn responded that she was unharmed and the officers saw no visible signs of injury. When the officers asked Lynn what the problem was, Lynn did not offer an explanation.
¶ 8. Chad was released from jail at approximately 1:00 a.m. Chad went home, took some pain medicine, and went to sleep. When Chad woke up that afternoon, he went to the Methodist Medical Center. The hospital records documented a bruised right cheek, blood marks in his eyes, and broken teeth.
¶ 9. Charles accepted a deal in which he pled guilty to resisting arrest. In exchange, the charges against Chad were remanded to the file but not dismissed. However, Chad filed a complaint in Hinds County Court against the City of Jackson. After a bench trial before the county court, Judge Henley found that officer's Moore and Dilmore were acting within the course and scope of their employment. Before *1108 Judge Henley could rule on the remaining issues, he unexpectedly passed away. Judge Bobby DeLaughter was appointed to fill the vacancy left by Judge Henley. Judge DeLaughter found that the officers were acting with malice and were not within the scope of their employment. Regardless, Judge DeLaughter determined that the officer's actions were reasonable and in good faith. Aggrieved, Chad appealed to the Hinds County Circuit Court.
¶ 10. On appeal, the circuit court found that the officers were acting within the course and scope of their employment, that Chad was not engaged in criminal activity, and that the actions of the officers were not reasonable or in good faith. Having found such, the circuit court ruled for Chad and awarded Chad $25,000 plus costs. Aggrieved by the circuit court's decision, the City appeals to this Court.

ANALYSIS
¶ 11. In considering the City's assertions, we are mindful that the findings of a circuit court, in a bench trial, should not be reversed unless this Court finds that the circuit court's findings were manifestly wrong, clearly erroneous, or that the circuit court applied an erroneous legal standard. City of Jackson v. Perry, 764 So.2d 373(¶ 9) (Miss.2000). Moreover, a circuit court's findings are safe on appeal if they are supported by substantial, credible and reasonable evidence. Id.
¶ 12. Before we address the City of Jackson's appeal, we first consider Chad's request that we dismiss the City of Jackson's appeal. Chad argues that we should dismiss the City's appeal because the City failed to appeal in the proper amount of time.
¶ 13. On April 16, 2003, the Hinds County Circuit Court awarded Chad Calcote $25,000. The circuit clerk's office mailed a copy of the circuit court's judgment to the City of Jackson through Hilton Miller, an attorney who filed an entry of appearance on behalf of the City of Jackson. The clerk mailed the copy to Hilton Miller's address listed in the 2002 Mississippi Bar Membership directory. As the Order permitting extension of time to appeal is not part of the record, we can only surmise that, for some reason, the City of Jackson did not know that the circuit court entered judgment on that date. Regardless, the City of Jackson's May 30, 2003, notice of appeal, apparently unchallenged, is part of the record and this matter is before this Court.
¶ 14. Chad asserts that the appeal is untimely. The Mississippi Rules of Appellate Procedure state that a notice of appeal "shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a). As mentioned above, the circuit court rendered its verdict on April 16, but the City of Jackson filed their notice of appeal on May 30, obviously after the expiration of the 30 day period mandated by our rules of appellate procedure. However, "a trial court may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time...." M.R.A.P. 4(g). Though the record is insufficient, the record suggests that the City of Jackson, by way of their motion for extension of time, took steps to appeal out of time apparently successfully.
¶ 15. Chad argues that the circuit court erred when it allowed the City of Jackson's request for extension of time to appeal. Chad cites Rule 77(d) of our rules of civil procedure. Rule 77(d) states "[l]ack of notice of the entry by the clerk does not affect the time to appeal, nor relieve, nor authorize the court to relieve, a party for failure to appeal within the time allowed, *1109 except as permitted by the Mississippi Rules of Appellate Procedure." M.R.C.P. 77(d). Additionally, Chad cites the comment to M.R.A.P. 4(g) for the proposition that when a motion for extension of time "is not filed until the extension period has begun to run, the burden rests on the appellant to show the failure to file a timely notice was a result of `excusable neglect.'" comment to M.R.A.P. 4(g). Moreover, "[m]ere failure to learn of entry of the judgment is generally not a ground for showing excusable neglect." Id. "Counsel in a case taken under advisement has a duty to check the docket regularly." Id.
¶ 16. Chad asserts that neither the City of Jackson's failure to enter appearances for subsequent counsel, nor the City of Jackson's failure to examine the correct court file rises to the level of "excusable neglect." Our hesitancy to agree with Chad stems from the fact that Chad did not attack the timeliness of the appeal after the circuit court granted the City of Jackson's motion for extension of time to appeal. Chad's response to the City's motion contained the same arguments that Chad presents on appeal. However, the order is not part of the record and we do not know why the circuit court rejected Chad's contentions.
¶ 17. Although Chad challenged the City's motion for extension of time to file their appeal, Chad did not advance any argument or challenge the circuit court's decision to extend the time for appeal in any other way until Chad raised his argument in his reply brief. Chad should have challenged the timeliness of the appeal before he submitted his reply to the City's brief. Even though Chad knew that the order permitted an out-of-time appeal, Chad did not ask the circuit court to reconsider that decision. Chad did not appeal the order that opened the door for the City's out-of-time appeal. Chad did not file a motion to dismiss the City's appeal. Chad did not cross-appeal. Without deciding the merits of Chad's assertion, we hold that it is insufficient to challenge the timeliness of an appeal after the appeal is otherwise proper and before this Court. Accordingly, this assertion is not well-taken. That being stated, we move on to the issues that are before this Court.

I. DID THE CIRCUIT COURT ERR IN FINDING THAT SLADE MOORE WAS ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT OR THAT THE CITY OF JACKSON ADMITTED TO SAID ACTS BEING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT?
¶ 18. The City makes two similar but distinctly different arguments within this issue. The City claims that the circuit court committed error when it found that (1) the City admitted that officer Moore's acts were within the course and scope of his employment and (2) that officer Moore's acts were within the scope of his employment. The City claims that if Chad's accusations are true, officer Moore's acts constitute malice. The logic behind such an assertion is clearif officer Moore's acts constitute malice, then officer Moore could not be acting within the course and scope of employment and the City cannot be liable for Chad's injuries.
¶ 19. To be sure, "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable ... for any conduct of its employee if the employee's conduct constituted ... malice. . . ." Miss.Code Ann. § 11-46-5(2). The City faces a rebuttable presumption "that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Miss.Code Ann. § 11-46-5(3).
*1110 ¶ 20. Ordinarily, we would now consider whether Officers Moore and Dilmore were acting within the course and scope of their employment. However, in the City's response to Chad's requests for admissions, the City unequivocally admitted that the Officers "were acting within the course and scope of their employment at the time [Chad] sustained his injuries." Having admitted such, "[a]ny matter admitted... is conclusively established unless the court on motion permits withdrawal or amendment of the admission." M.R.C.P. 36(b). Combined with the lack of any such motion in the record, it appears that the City, having admitted that the Officers acted within the course and scope of their employment, cannot assert on appeal that the Officers were not acting within the course and scope of their employment. That being resolved, this Court finds no error in the circuit court's determination that Officers Moore and Dilmore acted within the course and scope of their employment.
¶ 21. Within the same assignment of error, the City also argues that the circuit court erred when it reversed the county court's finding of malice and instead found that Officer Moore's actions were willful and wanton, intentional, and in reckless disregard of Chad's safety and well-being. The City claims that if Chad's accusations are true, officer Moore's acts constitute malice. If officer Moore's acts constitute malice, the City cannot be liable for Chad's injuries. "[A] governmental entity shall not be liable ... for any conduct of its employee if the employee's conduct constituted ... malice...." Miss.Code Ann. § 11-46-5(2) (Rev.2002).
¶ 22. Conversely, the City is liable if officer Moore acted in reckless disregard of Chad's safety and well-being. "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police ... protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002) (emphasis added). "We find reckless disregard when the `conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." Mississippi Dept. of Public Safety v. Durn, 861 So.2d 990, 995(¶ 13) (Miss.2003) (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11(¶ 11) (Miss.2000)). "For an officer to be found reckless, the actions must be `wanton or willful.'" Kelley v. Grenada County, 859 So.2d 1049, 1053(¶ 12) (Miss.Ct.App.2003) (quoting City of Jackson v. Lipsey, 834 So.2d 687, 691-92(¶ 16) (Miss.2003)). Willful and wanton conduct indicates degrees of fault somewhere between intent to do wrong and the mere reasonable risk of harm involved in ordinary negligence. Maye v. Pearl River County, 758 So.2d 391(¶ 19) (Miss.1999) (citations omitted).
¶ 23. The circuit court found that Officer Moore's actions were willful and wanton, intentional, and in reckless disregard of Chad's safety and well-being. A circuit court's findings are safe on appeal if they are supported by substantial, credible and reasonable evidence. Perry, 764 So.2d at (¶ 9) (citations omitted). Here, Chad presented evidence that Officer Moore shoved Chad's face into a concrete floor, pressed his fingers into Chad's eyes and rolled Chad's face back and forth across the concrete floor, causing three of Chad's front teeth to break. However, Officer Moore completely denied that Chad's teeth broke *1111 during the incident. Officer Moore never testified that he set out to break Chad's teeth. In fact, no one ever testified that Officer Moore maliciously broke Chad's teeth or caused him injury. The evidence suggests that Officer Moore meant to act as he did, but did not intend the results. But there was ample evidence to suggest that Officer Moore's conduct showed an appreciation of the risk that is involved when one exerts pressure onto another's face as they lay face down on a concrete floor. It is not a foreign concept that such behavior involves a high probability of harmand that proceeding accordingly involves a deliberate disregard of that risk. Accordingly, this issue is without merit.

II. DID THE CIRCUIT COURT ERR IN FINDING THAT CALCOTE WAS NOT ENGAGED IN CRIMINAL ACTIVITY?
¶ 24. The City asserts that the circuit court erred when it determined that Chad was not engaged in criminal activity at the time he suffered his injuries. The City's theory is clearimmunity attaches if Chad was engaged in criminal activity at the time of his injuries.
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police ... protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. Miss.Code Ann. § 11-46-9(1)(c) (Rev. 2002) (emphasis added).
¶ 25. The City argues that Chad cannot recover damages because he was engaged in criminal activity at the time of his injuries. The City points out that Chad was charged with two offenses. Chad was arrested for resisting arrest and disobeying the order of a police officer. Regarding the fact that Chad was not convicted of those charges, the City claims that the charges were passed to files and that passing charges to files is not an acquittal or a bar to further prosecution. The City points out that Chad answered the door when the Officers arrived at his parents' house. Further, that when the Officers asked to speak to Chad's parents, Chad told the Officers that "everything was fine" and that his parents were going to bed. The City claims that Chad admitted that after the Officers told Chad to be quiet, but Chad disobeyed and continued to talk. They demonstrate that Chad testified "I tried to explain but they didn't want to hear anything ... they just told me to stand over there and be quiet." Further, that Chad testified that he said "officer, please take it easy on my dad. He's getting down as fast as he can. If y'all will let me explain, you might see things differently." The City finally points out that Chad was under arrest prior to sustaining his injuriestherefore Chad was engaged in criminal conduct before his injury was inflicted, causing immunity to attach.
¶ 26. A plaintiff will not be successful against a municipality if he is engaged in criminal activity at the time of injury. Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002) (emphasis added). The evidence suggests that Chad was handcuffed and otherwise in submission at the time of his injuries. If, according to Officer Moore's testimony, Chad disobeyed his orders prior to arrest and the officers placed Chad in handcuffs, Chad was then in their custody. When Chad was injured, he was not contemporaneously engaged in criminal activity. At best, the City's version suggests that Chad had been engaged in criminal activity, rather than proving that Chad was engaged *1112 in criminal activity when Officer Moore ground Chad's face into the concrete floor. Therefore, there is no merit to this assertion.

III. DID THE CIRCUIT COURT ERR IN FAILING TO CONSIDER THE DEFENSES AFFORDED BY MISSISSIPPI CODE ANNOTATED SECTION 93-21-28?
¶ 27. Section 93-21-28 of the Mississippi Code sets forth the duties of a law enforcement agency in responding to one's allegations of domestic abuse. Miss. Code Ann. § 93-21-28 (Rev.2000). Subsection one of that section directs a law enforcement officer to take whatever steps are reasonably necessary to protect such a complainant from harm. Miss.Code Ann. § 93-21-28(1) (Rev.2000). Subsection two states that no officer will be held civilly liable for reasonable measures taken under authority of subsection one. Miss.Code Ann. § 93-21-28(2) (Rev.2000). Section 93-21-27 says that "a law enforcement officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith ... arising from an alleged domestic violence incident brought by any authorized party, or an arrest made in good faith pursuant to Section 99-3-7(3)...." Miss.Code Ann. § 93-21-27 (Rev.2004).
¶ 28. Apparently, the qualifier for immunity under Section 93-21-28 is that the officer must take steps that are reasonably necessary and the measures that the officer takes must be reasonable as well. The qualifier for immunity under Section 93-21-27 is that the arrest or act must be in good faith. Accordingly, neither of these statutes set forth an absolute bar to recovery. Thus, law enforcement officers that respond to a domestic violence do not enjoy an unlimited immunity based on the fact that the call reported domestic violence.
¶ 29. The record demonstrates that the circuit court heard evidence that the Officers handcuffed Chad and then ground his face into concrete, causing Chad's teeth to break. Testimony detailed that Chad's teeth were fine before he left his house, and broken when Chad got out of jail. To be sure, grinding a bound person's face into a hard surface could be interpreted as unreasonable and not reasonably necessary. One could even interpret such behavior as outside the bounds of good faith. This Court sees the results of domestic violence situations and the great harm domestic violence causes people. While this Court recognizes the difficult decisions that law enforcement officers must make and the dangerous situations that accompany those daily duties as well as the importance of insulating officers against unreasonable liability that could arise from those situations, that does not excuse any and all behavior. Because the circuit court had sufficient, reasonable, and credible evidence before it, the circuit court's finding that the immunity provisions of Sections 93-21-27 and 93-21-28 do not apply can not be manifest error.

IV. DID THE COURT PROPERLY HOLD THAT CALCOTE WAS INJURED DURING A MELEE WITH OFFICERS?
¶ 30. This issue is not suitable for review. Unfortunately, the City failed to support their argument with persuasive case law. "[F]ailure to cite case law in support of one's contentions acts as a procedural bar, preventing this Court from considering it." Ortman v. Cain, 811 So.2d 457, 462(¶ 16) (Miss.Ct.App.2002) (citing Ratcliff v. State, 752 So.2d 435, 437(¶ 7) (Miss.Ct.App.1999)).

*1113 V. DID THE CIRCUIT COURT ERR WHEN IT HELD THAT THE ACTIONS OF THE OFFICERS WERE UNREASONABLE AND NOT IN GOOD FAITH?
¶ 31. While the City asserts that Officers Moore and Dilmore acted reasonably and in good faith, the substance of their argument is that the officers' did not act in reckless disregard of Chad's safety and well being. We discussed the circuit court's finding of reckless disregard in issue one, above. As such, we will not reiterate our analysis in a second assignment of error.

VI. REQUEST FOR STATUTORY DAMAGES, POST-JUDGMENT INTEREST AND COSTS.
¶ 32. Chad requests statutory damages pursuant to Section 11-3-23 of the Mississippi Code Annotated (Rev. 2002). Section 11-3-23 allows this Court, upon affirmation, to render judgment against an appellant for fifteen percent of a judgment for money damages. Although that Section was repealed and does not apply to cases filed after January 1, 2003, Chad filed his complaint on August 26, 1998, and is therefore entitled to statutory damages. Superior Car Rental, Inc. v. Roberts, 871 So.2d 1286, 1288 (Miss.2004). Accordingly, we grant his request for statutory damages.
¶ 33. Chad also requests post-judgment interest at eight percent pursuant to Rule 37 of the Mississippi Rules of Appellate Procedure. Rule 37 states that "if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date judgment was entered in the court. . . ." M.R.A.P. 37. As we affirm the circuit court's decision, this Court also grants Chad's request for post-judgment interest pursuant to said rule, such interest to be calculated as provided by law.
¶ 34. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY INTEREST IS AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ. CONCUR. BARNES, J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., NOT PARTICIPATING.